409 A.2d 607 (1977)
Samuel H. CITRON, Edith Citron and William B. Weinberger, Plaintiffs,
v.
MERRITT-CHAPMAN & SCOTT CORPORATION, Louis E. Wolfson, Elkin B. Gerbert, Marshal G. Staub, Louis Goldberg, David Reich, and Cecil Wolfson, Defendants.
Court of Chancery of Delaware, New Castle County.
Submitted February 25, 1977.
Decided May 4, 1977.
Russell J. Willard, Jr. of Hastings & Willard, Wilmington, and Charles Trynin, New York City, for plaintiffs.
Michael D. Goldman of Potter, Anderson & Corroon, Wilmington, for defendants Merritt-Chapman & Scott Corp. and Goldberg.
Edward B. Maxwell, 2nd of Young, Conaway, Stargatt & Taylor, Wilmington, for defendants Louis E. Wolfson and Gerbert.
Alfred M. Isaacs of Flanzer & Isaacs, Wilmington, and Martin R. Gold of Gold & Marks, New York City, for defendant Staub.
Howard M. Handelman of Bayard, Brill & Handelman, Wilmington, for defendants Reich and Cecil Wolfson.
*608 BROWN, Vice Chancellor.
This is a derivative suit brought by two shareholders of Merritt-Chapman & Scott (hereafter "MCS"), a Delaware corporation, seeking initially a joint and several judgment in favor of MCS against certain present and former officers and directors of MCS for all compensation paid by the corporation to three of the individual defendants since 1961. The individual defendants have moved for summary judgment and, as a part of their briefing of the matter, plaintiffs have also asked for summary judgment on the issue of liability even though no motion to this effect has been filed.
Defendants base their motions on the fourth and fifth affirmative defenses set forth in the answer of the defendants Louis E. Wolfson and Elkin B. Gerbert. Specifically, they contend that the complaint fails to state a claim and that in any event any claims based on the matters alleged are barred by res judicata as a result of the court-approved settlement of a derivative action in the State of New York and the releases given by MCS pursuant thereto. The fact that the briefing is unduly lengthy, as I view it, and filled with literally hundreds of factual references  as to some of which there exists doubt that they are properly part of the record  makes it difficult to detail the factual matters with any degree of precision. Accordingly, I will make no effort to do so and will base my decision on only those factors which appear undisputed and pertinent.
Defendant Louis E. Wolfson was chairman of the board and chief executive officer of MCS from 1951 through 1969. Defendant Gerbert was a director from 1951 through 1969 and, during the time interval in question, was a member of the corporation's executive and investment committees. Also during the same time interval the defendant Staub was president, treasurer, director and member of the executive committee of MCS.
During the early 1960's MCS stock was being traded on the New York Stock Exchange at prices below its book value. On behalf of the corporation a plan was conceived whereby the corporation would use available cash to purchase its own outstanding stock so as to increase the book value of all remaining outstanding shares and to shrink the number of outstanding shares so as to divide earnings among a smaller number of shares. This plan was carried out by means of an undisclosed agreement or arrangement with one Joseph Kosow, then the head of an MCS subsidiary, whereby Kosow, through the formation of joint ventures with others, would purchase MCS shares on the open market at the going price with the understanding that MCS would later purchase the shares from the joint ventures at a price which guaranteed a profit to Kosow and his associates. This plan was initiated in 1961 and pursuant thereto hundreds of thousands of shares were acquired by Kosow and his group and, thereafter, by MCS. For the purpose of the present motions it may be assumed that this was accomplished with the knowledge and participation of Wolfson, Gerbert and Staub.
*609 In 1964 the federal government commenced an investigation into the situation for possible violations of the regulations of the Securities and Exchange Commission as well as those of the New York Stock Exchange. In 1966 federal indictments were returned against the above named three corporate officials. In general, the charges covered two categories of acts: First, defendants were charged with conspiracy to violate the anti-fraud provisions of the Securities Exchange Act of 1934 and the failure to note the contingent liabilities of MCS arising from the Kosow agreements in the financial statements attached to MCS's 1962 and 1963 annual reports filed with the SEC and the New York Stock Exchange. Second, there were charges of perjury and obstruction of justice before the SEC during its investigations. In a matter unrelated to the business of MCS Wolfson and Gerbert were also charged with the sale of unregistered stock in a corporation controlled by Wolfson known as Continental Enterprises, Inc. As to this latter matter, Wolfson and Gerbert were convicted on September 25, 1967 and, after unsuccessful appeals, began serving prison terms in April 1969.
As to the charges pertaining to the MCS matters, defendants were found guilty by a jury on August 8, 1968 (with the exception of the conspiracy charge which was dismissed by the Court). These convictions were appealed. While the appeals were pending, four separate shareholder derivative actions which had theretofore been filed in the Supreme Court of New York were consolidated under the caption of Schluter v. Merritt-Chapman & Scott Corporation, et al., Index No. 12318/68 (hereafter referred to as the "Schluter Action"). On September 3, 1969 this suit was filed shortly after a companion suit had been instituted by these same plaintiffs in New York. As filed, the complaint sought the return to MCS of all compensation paid to Wolfson, Gerbert and Staub since 1963 on the grounds of their disloyalty and unfaithfulness to MCS as evidenced by their criminal convictions on August 8, 1968 and also by their convictions in the Continental Enterprises, Inc. prosecution.
On November 11, 1970 the convictions of the defendants as to the MCS prosecution were reversed. After two subsequent retrials before juries, the government was unable to obtain convictions, except that on the third trial, ending in 1972, Gerbert was found guilty of the perjury charge. Thereafter, to resolve the matter, all other charges were dismissed in return for Wolfson's plea of nolo contendere to one count of false filing of the MCS annual report for 1963 and Gerbert's agreement not to appeal his perjury conviction. Both Wolfson and Gerbert were fined $2,000, given a suspended sentence of 18 months, and placed on probation for one day.
Staub, who was not retried following the reversal of his August 8, 1968 conviction, resigned all corporate offices in February 1969. Wolfson and Gerbert resigned in April 1969 about the time they began serving their prison sentences, although Wolfson continued to act as a consultant.
In the meantime, in the Schluter Action, summary judgment was granted on the merits in favor of certain defendants, including Gerbert. As consolidated, the second count of that action sought a return from Wolfson of compensation and expenses paid to him during 1967 in an amount of $303,075 on the basis that it was excessive and bore no reasonable relationship to his value to the corporation. In April 1972 the parties agreed to a settlement of the suit whereby Wolfson would pay $250,000 to MCS in return for a dismissal of the action and general release of all liability in the favor of all named defendants whether or not they were a party to the settlement stipulation. The stipulation further provided that the releases to be given by MCS would be a general release as to
"... every matter, claim and cause of action mentioned, alleged or embraced within the scope of any of the pleadings herein, including but not limited to, the consolidated amended complaint in Schluter v. Merritt Chapman, or any other *610 matter, claim or cause of action whatsoever arising out of or in connection with any transactions which could have been asserted or raised under said pleadings;...." (Emphasis added.)
The proposed settlement was referred to a master to conduct a hearing into its fairness. Notice of the hearing was given to all MCS shareholders of record, which notice indicated the scope of the release to be given to all named defendants. Plaintiffs here neither appeared not objected to the Schluter Action settlement despite the fact that the fourth affirmative defense to this action, in the answer already filed, relied upon the Schluter Action as foreclosing the claims asserted by plaintiffs in this suit.
By order and judgment dated May 7, 1973, the New York Supreme Court, County of New York, directed that the settlement be "consummated in accordance with the terms of the stipulation of settlement" and dismissed the Schluter Action "on the merits" and "with prejudice to the plaintiffs and Merritt Chapman." Wolfson paid the $250,000 and, along with Gerbert, received a release (although the actual release does not contain the language of the stipulation referring to matters or causes which could have been asserted or raised in the pleadings.)
Because the complaint here merely charges Wolfson, Gerbert and Staub with "acts of disloyalty and unfaithfulness" to MCS as a result of conduct which led to their criminal prosecutions, and convictions as to Wolfson and Gerbert, defendants argue that in no way states a claim for the return of all compensation received by them from 1963 (or 1961 as plaintiffs would now have it) through 1969, including deferred compensation to which they were entitled under their employment agreements subsequent to 1969. Secondarily, since the consolidated Schluter Action sought a return of compensation, even though it referred specifically to 1967, defendants argue that the return of all compensation sought by plaintiffs here was one which could have been asserted under the Schluter pleadings and, since plaintiffs, as shareholders with notice, made no objection to the scope and intention of that settlement, the judgment and releases given there are res judicata and binding as to all claims on behalf of MCS for a return of compensation from Wolfson, Gerbert and Staub rather than foreclosing such claims as to the year 1967 only.
I am convinced that the matter can be determined on the defendants' contention that the pleadings and undisputed facts of record show that no cause of action is alleged which would support the relief claimed by plaintiffs. I reach this conclusion because I cannot get around the fact that what the complaint seeks from the individual defendants is a return of their compensation rather than either specified or general damages for wrongs against the corporation.
The complaint does not allege that MCS incurred actual damages as a result of the acts and convictions complained of. The Continental Enterprises convictions had nothing to do with MCS affairs except perhaps to the extent that defendants received deferred compensation while serving their prison terms. Nor does the complaint charge that Wolfson, Gerbert and Staub  aside from the matters for which they were indicted and convicted  failed to perform their duties or failed to earn their compensation from the corporation. Under Delaware law a corporation has the power to purchase its own stock, 8 Del.C. § 160, and it has been held that the purchase by a corporation of a substantial block of its own stock at a price in excess of market does not make the purchase an unfair transaction. Cheff v. Mathes, Del.Supr., 199 A.2d 548 (1964). In its prosecution the federal government made clear that it was not contending that there was anything illegal about the MCS agreements with Kosow, but rather sought its convictions of the corporate officers for violating applicable regulations and for obstructing justice by failing to disclose such activities. The end result of the purchase program, including those shares acquired through Kosow and his associates, produced an aggregate increase in book value in the remaining outstanding *611 MCS shares in excess of $4.9 million. Except to the extent that their personal holdings in MCS increased in their book value to the same extent as did the shares of all other remaining shareholders. There is nothing to indicate that the defendants profited personally by the conduct complained of. There is no charge of a conflict of interests by the defendant officers and no insinuation that they personally exploited a corporate opportunity. Gerbert's MCS-related conviction was for stating under oath during the federal investigation that he had no knowledge of the Kosow arrangements, when in fact he did. Wolfson's conviction derived from a plea of nolo contendere to a charge of falsely filing an annual report which failed to reflect the contingent liabilities of MCS stemming from the Kosow agreements. Neither conviction was for conduct which resulted in any loss or damage to MCS.
Thus analyzed, the complaint brought on behalf of the corporation alleges no damage to the corporation and no profit by the individual defendants at the expense of the corporation. Instead, based on the criminal prosecution arising in part from the Kosow transactions, the complaint essentially charges that the defendants Wolfson, Gerbert and Staub were guilty of "disloyalty and unfaithfulness" to the corporation and that as a consequence a judgment should be rendered against them on behalf of the corporation for all compensation received by them from 1961 onward, in addition to cancelling any "employment and retainer agreements" still existing between them and MCS. As such, I fail to see where a viable cause of action is alleged.
While numerous decisions hold that corporation compensation is properly recoverable in a situation where the disloyalty of the officer or director constitutes the usurpation of a corporate opportunity, Guth v. Loft, Del.Supr., 5 A.2d 503 (1939); Borden v. Sinskey, 530 F.2d 478 (3rd Cir. 1976), no authority is offered for the proposition that every illegal act or breach of fiduciary duty committed by a corporate officer warrants a forfeiture of his compensation. Normally, there must also be some detriment to the corporation or conflict of interest on the part of the officer. Compare also Theodora Holding Corporation v. Henderson, Del.Ch., 257 A.2d 398 (1969); Craig v. Graphic Arts Studio, Inc., Del.Ch., 166 A.2d 444 (1960). By its very nature a derivative suit carries with it the underlying premise that the disloyal conduct complained of has resulted in some harm to the corporation and its shareholders for which the defendant officers should be held accountable. But loss or damage to the corporation cannot be inferred from general and indefinite allegations and the mere assertion that conduct was "to the detriment" of the corporation has been held to be insufficient in the absence of other factors which would show an independent right to recover against an officer or employee even in the absence of loss to the corporation. Compare Brophy v. Cities Service Co., Del.Ch., 70 A.2d 5 (1949). Merely charging disloyalty and unfaithful conduct would seem no stronger.
Plaintiffs' answer to this, also based on Brophy as well as other decisions, is that where a corporate officer or employee, through confidential information obtained by means of his corporate position, profits personally by breaching the fiduciary duty owed by him to the corporation, he can be held accountable to the corporation for such profits even though the corporation itself has suffered no harm. This is no more than an application of the fundamental equitable principle that one in a fiduciary position cannot be permitted to profit personally from information obtained in that capacity. Plaintiffs further argue that the same result holds true as to corporate officers who conspire to permit another to profit based on confidential corporate information provided by the officers in breach of this duty of loyalty. In such a situation, plaintiffs suggest, all involved are jointly and severally liable to the corporation, citing Penn Mart Realty Company v. Becker, Del.Ch., 298 A.2d 349 (1972); Irving Trust Co. v. Deutsch, 73 F.2d 121 (2nd Cir. 1934). From this plaintiffs argue that their complaint makes clear reference to the Kosow agreements *612 engineered by the individual defendants whereby MCS eventually purchased shares from Kosow and his associates at a considerable profit to Kosow. Plaintiffs now assert that these profits to Kosow were some $4.2 million and that their complaint is broad enough to seek the recovery of this sum from the defendants in this action.
Plaintiffs deny that they are attempting to introduce a new theory of liability. On the contrary, they say the issue of the Kosow profits is mentioned in their allegations and has always been a part of the case. They say that their theory of liability is now and always has been the "disloyalty and unfaithfulness" of the defendants as evidenced by the Kosow transactions and the federal prosecutions stemming therefrom. To the extent that their complaint may be considered an inartful statement of this claim, they urge that under the liberal considerations of notice pleading this should not be held against them and, as I understand it, that if necessary, they should be permitted to amend so as to more elaborately and artfully express the subject matter of their complaint. However, I am inclined to agree with defendants that this position is merely a diversionary one necessitated by the circumstances.
The complaint under attack has been on file for more than seven years. Action on the matter has been deferred by consent of the parties pending the outcome of the criminal prosecutions, which delay would have been unnecessary to the civil prosecution of a claim based on the Kosow agreements alone. It was only after the criminal matters were concluded that activity in this case was renewed by virtue of the briefing on the present motions. As best I can tell, it was not until this briefing stage that plaintiffs gave indication that they were seeking to recover anything except a return of compensation from defendants.
The suit was initiated by sequestration, and the defendants entered a general appearance in order to obtain a release of their sequestered shares. Plaintiffs opposed the release of these securities on the theory that because of pending actions in other jurisdictions defendants might not have assets to satisfy the judgment plaintiffs might recover here. Specifically, it was argued that pending derivative suits in New York against the defendant Louis Wolfson should be treated as contingent liabilities against his net worth. In support of this counsel for plaintiffs, as far back as 1970, filed his affidavit along with a copy of the complaint in a New York action of Spelfogel v. Wolfson, et al., which specifically sought the recovery on behalf of MCS of the so-called Kosow profits. Counsel's affidavit indicated that Wolfson's prospective liability in the New York action for the Kosow profits was "approximately $4,000,000" which, it was argued, impinged upon Wolfson's financial ability to respond to a money judgment in the present action. It was urged that this be considered by the Court in deciding whether or not to vacate the sequestration as to his shares in this suit, a position inconsistent with any thought that the same recovery was being sought in this suit.
Another factor worthy of notice is that Kosow is not a defendant in this proceeding despite the fact that plaintiffs now contend that he was an agent and employee of MCS (as found by our Superior Court in Merritt-Chapman & Scott Corp. v. Wolfson, Del.Super., 321 A.2d 138 (1974)), a status on which they would now rely to strengthen their theory of joint and several liability as to Wolfson, Gerbert and Staub for the profits realized by Kosow. Plaintiffs attempt to explain Kosow's absence on the fact that he is a nonresident without attachable Delaware assets, and thus not subject to this Court's jurisdiction. While I do not question the accuracy of this representation, the various other factors previously mentioned persuades me that this is not the sole reason for Kosow's absence as a party defendant.
As a result of the foregoing, I am convinced that through their briefing on the present motions plaintiffs are attempting to introduce a new element into the case some seven years after the complaint was filed  an element which they have not heretofore made apparent either by their pleadings or *613 the positions taken by them as to the papers on file.
Since the proceeding was initiated through sequestration, this presents a problem. It is well established in this jurisdiction that while a complaint in an action commenced by sequestration may be supplemented and amended to more elaborately express the subject matter of the original complaint, it may not be amended so as to incorporate a cause of action not asserted in the original complaint once the nonresident defendants have elected to appear in response to the original allegations and demand. Tenney v. Jacobs, Del.Supr., 240 A.2d 138 (1968); Townsend Corporation of America v. Davidson, Del.Ch., 181 A.2d 219 (1962). As stated in Tenney v. Jacobs at 240 A.2d 139:
"The fundamental proposition in matters of this sort is that a nonresident whose property has been seized by sequestration is entitled to assume, when he makes his election to appear and defend the suit, or to default and lose his seized property, that if he appears he will be called upon to litigate only those causes of action asserted against him in the original complaint. To subject him at some future time to additional new causes of action with a consequent increase in potential liability would be basically and patently unfair."
Viewed in the light of this standard it seems clear that what plaintiffs want the Court to do  either by finding that it is already subsumed within the allegations of the complaint or by granting them leave to specifically add it by amendment  is to allow them to assert a new cause of action in order to keep their suit alive based on the recognition that certain facts alleged in the complaint may be supportive of both theories. This is made evident by the fact that originally they wanted a return of all compensation from the defendants Wolfson, Gerbert and Staub from 1961 onward; now they also want from these three defendants all profits realized by Kosow as a result of certain of the same transactions. They do not indicate that they are abandoning their claim for the compensation. Thus they seek an increase in liability which, I conclude, was not evident from the complaint  fairly read  at the time the individual defendants made their decision to appear and defend in response to the sequestration order.
In short, I find that the complaint does not, by its terms, allege a cause of action for recovery of profits made by Kosow. I further find that because of the indefinite language of the complaint which compels this conclusion, the defendants Wolfson, Gerbert and Staub were not put on sufficient notice of this potential claim at the time they entered their appearance to justify amendment of the complaint at this time. Accordingly, I conclude that the Kosow profits transaction may not now be raised by the plaintiffs in this action without the issuance of additional process. I further find that to the extent the complaint seeks to recover from the individual defendants all compensation paid to Louis Wolfson, Gerbert and Staub based on their "disloyalty and unfaithfulness" to MCS as evidenced by the federal prosecutions, it fails to set forth an actionable claim against them.
The motions of the various individual defendants for summary judgment will be granted. To the extent plaintiffs seek summary judgment on the issue of liability, it is denied. I ask Mr. Maxwell to submit an appropriate form of order, on notice.