Samuel H. CITRON, Edith Citron, and William B. Weinberger, Plaintiffs Below, Appellants,

v.

MERRITT–CHAPMAN & SCOTT CORPORATION, Louis E. Wolfson, Elkin B. Gerbert, Louis Goldberg, David Reich, and Cecil Wolfson, Defendants Below, Appellees.

Supreme Court of Delaware.

Submitted Dec. 15, 1978.

Decided Sept. 10, 1979.

Revised Oct. 9, 1979.

---

Russell J. Willard of Hastings & Willard, Wilmington, and Martin Mushkin of Philips & Mushkin, New York City, of counsel, for appellants.

H. Albert Young, Bruce M. Stargatt and Edward B. Maxwell, 2nd, of Young, Conaway, Stargatt & Taylor, Wilmington, for appellees Louis E. Wolfson and Gerbert.

Howard M. Handelman and Jeffrey M. Weiner of Bayard, Brill & Handelman, Wilmington, for appellees Reich and Cecil Wolfson.

Michael D. Goldman of Potter, Anderson & Corroon, Wilmington, for appellees Merritt-Chapman & Scott Corp. and Goldberg.

Before DUFFY, QUILLEN and HORSEY, Justices.

QUILLEN, Justice:

This is an appeal from a Court of Chancery decision, *Citron v. Merritt-Chapman & Scott Corporation*, Del.Ch., 409 A.2d 607 (1977), granting defendants' motion for summary judgment and dismissing plaintiffs' complaint with prejudice. This appeal relates primarily to the defendants Louis E. Wolfson and Elkin B. Gerbert.[1] We affirm.

A derivative suit was filed by shareholders of Merritt-Chapman & Scott Corporation (Hereinafter "MCS"), a Delaware corporation, on September 3, 1969 seeking initially a joint and several judgment in favor of MCS against certain present and former officers and directors of MCS for all compensation paid by the corporation to three of the individual defendants since 1961. The defendant Louis E. Wolfson was chairman of the board, chief executive officer and a director of MCS between 1951 and 1969. Defendant Elkin B. Gerbert was a

---

1. The other defendants-appellees are sued in their capacity as directors and their liability is dependent on the liability of the two primary defendants-appellees.

director of MCS from 1951 until 1969. Defendant Marshal G. Staub was president, treasurer, director and member of the executive committee during the time interval in question.[2] MCS was formerly in the construction business but has been in the process of complete liquidation since 1962.

During the early 1960's the price of MCS stock traded on the New York Stock Exchange was well below its book value. MCS's financial advisor conceived a stock purchase program whereby MCS would use its available cash to purchase its own outstanding stock. The effect of such purchases would be to further increase the book value of all of the MCS shares remaining outstanding after the purchase, by shrinking the number of shares outstanding. The plan to purchase these shares was initiated in 1961 and, due to certain loan restrictions in agreements with MCS's lenders, one Joseph Kosow was employed to purchase MCS shares on the open market at the going price with the understanding that MCS would later purchase the shares from Kosow at a fixed price. As a result of the purchase activity, there was an increase in the book value of the remaining MCS shares in excess of $4.9 million. It is alleged by the plaintiffs that the same activity profited Kosow and his associates $4.2 million.

In 1964 the Securities and Exchange Commission (SEC) began investigating the stock purchase program for possible violations of the federal securities laws. In 1966 federal indictments were returned against Wolfson, Gerbert and Staub for conspiracy to violate the antifraud provisions of the Securities Exchange Act of 1934, failure to note the contingent liabilities of MCS arising from the Kosow agreements in the financial statements attached to MCS's 1962 and 1963 annual reports filed with the SEC and the New York Stock Exchange, and charges of perjury and obstruction of justice before the SEC during its investigations.

On August 8, 1968, the three officers were found guilty of the above charges by a jury (with the exception of part of the conspiracy charge which the court dismissed). This suit was instituted between the time of the convictions and the reversal of these convictions in 1970.[3] Defendants were retried twice, which trials essentially resulted in hung juries except that in 1972, on the second retrial, Gerbert only was found guilty of perjury. The criminal matter was resolved in the fall of 1972 when all other charges were dismissed in return for Wolfson's plea of *nolo contendere* to one count of false filing of the MCS annual report for 1963 and Gerbert's agreement not to appeal his perjury conviction.

After an initial flurry of activity over sequestration and answers (October 1969 through January 1971), no action was taken in the Court of Chancery until April 1973 when an amendment to the complaint, updating the facts, was filed, but never presented, and defense motions for summary judgment were filed in May 1973. Then there basically ensued three years of inaction followed by a year and a half of activity leading to the Vice-Chancellor's decision.

Since it seems to us from the record that the plaintiffs have shifted their legal theories, presumably as a result of a combination of the federal criminal case developments and the Vice-Chancellor's opinion below, the questions presented on appeal seem to us somewhat muddied. We of course look solely to the record in this case. In the hope of clarifying the record, we think it wise and necessary to note our agreement with the Vice-Chancellor on two matters which may not presently be in dispute.

First, we agree with the Vice-Chancellor "that what the complaint seeks from the individual defendants is a return of their compensation rather than either specified or general damages for wrongs against the corporation." Specifically, the complaint

2. Staub was dismissed from the appeal.

3. There were also other suits filed in New York which have led to the issue of *res judicata* in

the present suit. Our decision here does not require us to reach that issue.

did not fairly put defendants on notice that plaintiffs sought for the corporation reimbursement from these defendants of the Kosow profits. Kosow's name is only mentioned as part of the factual development of the alleged criminal violations in the indictment. As the Vice-Chancellor noted, it took the plaintiffs seven years to give indication that they were seeking the Kosow profits. That is understandable because the complaint does not seek such profits.

Second, we further agree with the Vice-Chancellor's conclusion that "an action commenced by sequestration . . . may not be amended so as to incorporate a cause of action not asserted in the original complaint once the non-resident defendants have elected to appear in response to the original allegations and demand." *Tenney v. Jacobs*, 43 Del.Ch. 526, 240 A.2d 138, 139 (1968); *Townsend Corporation of America v. Davidson*, 40 Del.Ch. 295, 181 A.2d 219, 221–223 (1962). Thus, the Vice-Chancellor correctly concluded that, if the "Kosow profits" were permitted to be claimed in this lawsuit, it would in essence be a new cause of action with different damages. The cause of action asserted began as a compensation forfeiture case and it remains a compensation forfeiture case. The "Kosow profits" cannot be claimed here. Moreover, sequestration must make us mindful of an overly lax interpretation of the complaint which could result in unfairness.

The Vice-Chancellor relied heavily on the fact that "the complaint brought on behalf of the corporation alleges no damage to the corporation and no profit by the individual defendants at the expense of the corporation." Under such circumstances, he failed "to see where a viable cause of action is alleged." *Citron v. Merritt-Chapman & Scott Corporation, supra*, 409 A.2d at 611; see also *Brophy v. Cities Service Co.*, 31 Del.Ch. 241, 70 A.2d 5, 8 (1949); *Craig v. Graphic Arts Studio, Inc.*, 39 Del.Ch. 447, 166 A.2d 444, 447 (1960); compare Fletcher Cyclopedia Corporations (Perm.Ed.) § 2145. Given the fact that due to loan restrictions, MCS could not, at the time of the Kosow purchases, purchase the stock in its own

name, we are not unsympathetic to the Vice-Chancellor's view "that the purchase by a corporation of a substantial block of its own stock at a price in excess of market does not make the purchase an unfair transaction. *Cheff v. Mathes*, 41 Del.Ch. 494, 199 A.2d 548 (1964)." *Citron v. Merritt-Chapman & Scott Corporation, supra*, 409 A.2d at 610. We find, however, the case can be decided on narrower grounds and do not reach the issues necessarily suggested by the above quoted and similar language in the Vice-Chancellor's opinion. There are basically three issues as we see it.

The first relates again to the Kosow profits. On appeal, with particular emphasis at oral argument, the plaintiffs sought to use the Kosow profits as a basis for liability for forfeiture of compensation. As we understand the argument, the complaint as originally drawn "made reference to the 1968 convictions" to assert that such convictions would be "conclusive proof of its underlying facts" in this civil action. Thus, the convictions were merely evidence of the underlying conduct of the defendants and such conduct, particularly the sanctioning of the "Kosow profit" transactions, is the fundamental basis for liability justifying the compensation forfeiture.

The complaint not only fails to fairly give notice of any damage claim for the "Kosow profits", it also fails to fairly allege a claim of forfeiture of compensation based on the "Kosow profits." The only place Kosow's name is mentioned in the complaint is in paragraph 7(b) and fairly read, especially when read in conjunction with paragraph 10, it is clear that the matters detailed in paragraph 7(b) are there only for the purpose of supplying allegation specification to the criminal convictions and for the purpose of recovering the compensation paid to defendants on the basis of the criminal convictions. The reference to Kosow is clearly not for the purpose of setting forth the profits made by Kosow. Moreover, as the Vice-Chancellor noted:

". . . the federal government made clear that it was not contending that there was anything illegal about the MCS

agreements with Kosow, but rather sought its convictions of the corporate officers for violating applicable regulations and for obstructing justice by failing to disclose such activities."

*Citron v. Merritt-Chapman & Scott Corporation, supra,* 409 A.2d at 610. Thus, the transactions giving rise to "Kosow profits" are not fairly alleged as a basis of liability for compensation forfeiture any more than they are as an independent item of damage.

■ The second issue goes beyond the question of the Kosow profits. There is an additional question of whether the complaint fairly read is based solely on the fact of criminal convictions against the two appellees. We find that it is. The pertinent paragraphs are paragraphs 7 through 10 of the complaint. Paragraph 7(a) relates to a criminal conviction unrelated to MCS and the allegations clearly rest solely on the incapacity arising from imprisonment, which seems irrelevant since the two defendants here resigned in early 1969 at the time they commenced their prison sentences. Paragraph 7(b)'s vital language is that "Wolfson [and] Gerbert were convicted of criminally violating the anti-fraud provisions of the Federal Securities Act. . ." Paragraph 8 noted in its operative language that "the other individual defendants . . have wrongfully continued to make to Wolfson . . . and Gerbert . . . payments . . . although Wolfson . . . and Gerbert have been adjudicated to be guilty of criminal acts. . . ." Paragraph 9(a), in its key language, says the "criminal acts of which Wolfson . . and Gerbert were convicted . . . and their commission of such acts . . . were fraudulently concealed . . . since 1963. . . ." Paragraph 9(b) notes that "[b]y reason of such fraudulent concealment and the violation of their fiduciary duties . . . through their commission of such criminal acts, . . . compensation . . . should be declared forfeited. . . ."

It is true that the criminal acts are described in terms of breach of fiduciary duty, disloyalty and unfaithfulness detrimental and inimical to Merritt's interests but throughout it is the fact of criminal conviction that is used to justify compensation forfeiture. It is not the underlying conduct which, indeed, is not even specified to any meaningful degree. We think a fair reading of the complaint is that the defendants should not get paid because they were convicted of crimes which prevented them from the performance of duty or evidenced malperformance. But it was the convictions that gave rise to the lawsuit.

Third, and finally, it is necessary to focus on the two criminal convictions that were ultimately incurred. In the fall of 1972, Gerbert was convicted of perjury as alleged in count three of the indictment as a result of testimony before the United States Securities and Exchange Commission on October 14, 1965 because he denied knowledge of "agreements whereby Mr. Wolfson arranged with another person to buy Merritt-Chapman stock." Wolfson entered a plea of *nolo contendere* to count five charging that he "wilfully" on or about April 30, 1964 made a false filing of MCS's annual report for 1963 with the New York Stock Exchange and the Securities and Exchange Commission in that the balance sheet did not disclose the contingent liability of Merritt as a result of the Kosow agreements.

On November 30, 1972, Gerbert, who had agreed not to appeal his conviction, was fined $2,000, given a suspended sentence of 18 months, and placed on probation for one day. On the same day, Wolfson was fined $10,000, given a suspended sentence of 18 months and placed on probation for one day.

As a result of these convictions our Superior Court has held:

"Conviction of these offenses establishes that Wolfson and Gerbert were adjudged to have been derelict in the performance of their duty as director or officer, and they are therefore not entitled to indemnification against expenses incurred in connection with counts three and five."

*Merritt-Chapman & Scott Corporation v. Wolfson,* Del.Super., 321 A.2d 138 (1974). The Court of Chancery noted that "[n]ei-

ther conviction was for conduct which resulted in any loss or damage to MCS." *Citron v. Merritt-Chapman & Scott Corporation, supra,* 409 A.2d at 611. Thus, under the legal theory of the case adopted by the Court below, there was no basis for liability as the result of these convictions.

The problem presented concerns the relationship of these convictions to a lawsuit seeking "a forfeiture of all compensation and other remuneration paid to defendants . . . from and after 1963." Even if one adopts the more expansive view of liability, rejected by the Court below, and holds that dereliction of duty can result in compensation forfeiture notwithstanding the lack of actual harm to the corporation [See *Wilshire Oil Co. of Texas v. Riffe,* 10th Cir., 406 F.2d 1061 (1969), cert. den. 396 U.S. 843, 90 S.Ct. 105, 24 L.Ed.2d 92 (1969)], the question of forfeiture of compensation must still be governed by the circumstances in each particular case. *Fletcher, supra,* § 2145.

 We have held that liability under the complaint in this case must rest on the criminal convictions. Notwithstanding the seriousness of those convictions, the fact is that they must be considered as a single incident of derelict behavior by each defendant from which a forfeiture of six years compensation and benefits is being requested. No pattern of criminality of either defendant was established by his conviction. It was not even contended by the federal government that the agreements with Kosow were illegal. The sentences imposed were moderate at best. In balance sheet position, it appears that there was benefit rather than harm to the corporation and the shareholders who retained their status. The plaintiffs' delay in pursuing the matter gives an additional reason to withhold relief. Furthermore, in the view we take of the case, all of the relevant facts are matters of record. Having reviewed them, we do not find that the dereliction of duty of either defendant can legally justify a retroactive forfeiture of compensation. Accordingly, we affirm.

It should be noted, however, that several unusual factors were present in this case, including the sequestration commencement, the limited scope of the complaint, the basic theme of the complaint that compensation for the period should be forfeited due to a pattern of criminal activity as established by convictions and the delay in prosecution of this case due to the pendency of the criminal proceedings and perhaps due to the conclusion of the criminal proceedings. We do not minimize the derelictions of duty established by a guilty finding and at least left open by a *nolo contendere* plea. But the criminality that the plaintiffs thought was established by the convictions outstanding when the complaint was filed, was, for the most part, undone by subsequent judicial action in the criminal case. The plaintiffs were left without a case here and they cannot restructure it now.

The granting of defendants' motion for summary judgment and the denial of plaintiffs' motion for summary judgment and post judgment relief are affirmed.