EMERALD PARTNERS, a New Jersey
Limited Partnership, Plaintiff
Below, Appellant,

v.

Ronald P. BERLIN, David L. Florence,
Rex A. Sebastian, Theodore H. Strauss
and Hall Financial Group, Ltd., a Texas
Limited Partnership, Defendants Below,
Appellees.

No. 393, 1998.

Supreme Court of Delaware.

Submitted: Jan. 27, 1999.
Decided: March 16, 1999.

R. Franklin Balotti, Gregory V. Varallo (argued), and Daniel A. Dreisbach, Richards, Layton & Finger, Wilmington, for Appellant.

Edward M. McNally, Lewis H. Lazarus (argued), and Joseph C. Schoell, Morris, James, Hitchens & Williams, Wilmington and Of Counsel: Hal Marshall, P.C., Dallas, Texas, for Appellees Ronald P. Berlin, David L. Florence, Rex A. Sebastian, and Theodore H. Strauss.

Vernon R. Proctor (argued) and Christopher P. Simon, the Bayard Firm, Wilmington, for Appellee Hall Financial Group, Ltd.

Norman M. Monhait, Rosenthal, Monhait, Gross & Goddess, P.A., Wilmington, for Amicus Curiae National Association of Securities and Commercial Law Attorneys.

Before WALSH, HOLLAND and BERGER, Justices.

WALSH, Justice:

In this appeal from the Court of Chancery, we review the grant of summary judgment in favor of the defendant corporation and its directors, on the ground that the plaintiffs, in their attack on a merger, had not sufficiently pled claims of entire fairness and best price. We conclude that the entire fairness claim was fairly pleaded and is intertwined with disclosure violation claims. Accordingly, we reverse as to the director defendants.

We also conclude that the Court of Chancery correctly ruled that the defendants had been "wrongfully" preliminarily enjoined within the meaning of Chancery Court Rule 65(c) and were thus entitled to recover provable damages up to the amount of the substituted security. We also affirm the Court of Chancery's determination of the amount of such damages.

I

The appellant, Emerald Partners, a New Jersey limited partnership, filed this action on March 1, 1988, to enjoin the consummation of a merger between May Petroleum, Inc. ("May"), a Delaware corporation and thirteen corporations owned by Craig Hall ("Hall"), the Chairman and Chief Executive Officer of May. Also joined as defendants were May's directors, Ronald P. Berlin, David L. Florence, Rex A. Sebastian, and Theodore H. Strauss (collectively the "director defendants"). Added later as a defendant was Hall Financial, the successor in interest to Hall Financial Group, Inc., the corporate defendant produced by the merger of May and the Hall corporations.

In October, 1987, Hall, at that time a holder of 52.4% of May's common stock, proposed a merger of May and thirteen sub-chapter S corporations owned by Hall that were primarily engaged in the real estate service business. The board of directors of May consisted of Hall and Berlin, the inside directors, and Florence, Sebastian and Strauss, the outside directors.

The outside directors authorized the engagement of Bear Stearns & Company ("Bear Stearns") to act as investment advisor and render a fairness opinion to the board and the May stockholders. On the basis of company valuations and the Bear Stearns fairness letter, the transaction, as eventually crafted, contemplated that Hall would receive twenty-seven million May common shares in exchange for the merger of the Hall corporations with May, increasing Hall's shareholding to 73.5 % of May's outstanding common stock as reflected in the post-merger entity.

May and the Hall corporations entered into a proposed merger agreement on November 30, 1987. On February 1, 1988, effective January 29, 1988, Hall reduced his beneficial interest in May to 25% of the outstanding common stock by transferring shares to independent irrevocable trusts created for the benefit of his children. This transfer took place before the record date and prior to the stockholder vote on the merger. The merger agreement was reaffirmed by the board on February 13, 1988 with the only change reflecting the reduction in Hall's ownership. On February 16, 1988, May issued a proxy statement to shareholders that described May, the Hall corporations and the proposed merger terms. The May shareholders approved the merger on March 11, 1988, despite the pendency of Emerald Partners' request for injunctive relief.

Following expedited discovery, the Court of Chancery, on March 18, 1988, issued a preliminary injunction enjoining the merger on the grounds that Article Fourteenth of May's certificate of incorporation required a supermajority vote and that at the special meeting of the stockholders either no quorum was present, or the merger did not receive the required vote. *Emerald Partners v. Berlin*, Del.Ch., C.A. No. 9700, 1988 WL 25269 (Mar. 18, 1988). Emerald Partners posted an injunction bond in the amount of $500,000,[1] and the defendants filed an expedited interlocutory appeal.

This Court, *en banc*, orally reversed the grant of the injunction on August 15, 1988,

---

1. Three days later a $500,000 irrevocable letter of credit was substituted for the cash bond. On March 12, 1992 the Court of Chancery, with defendants' approval, allowed 320,000 shares of HFG common stock, valued at $99,200, to be substituted for the $500,000 letter of credit.

and later issued a written opinion holding that the supermajority provision was inapplicable and that the quorum requirement and the voting power provisions of the certificate of incorporation were correctly applied and satisfied. *Berlin v. Emerald Partners,* Del. Supr., 552 A.2d 482 (1988) (*Emerald I* ). Thereafter, the merger was completed on August 15, 1988.

Despite the consummation of the merger, Emerald Partners continued its class and derivative claims and these efforts are reflected in several subsequent rulings in the Court of Chancery. *See Emerald Partners v. Berlin,* Del.Ch., 564 A.2d 670 (1989) (denying defendants' motion to disqualify Emerald Partners as class representative, but granting their motion to disqualify plaintiff's law firm in the derivative portion of the suit); *Emerald Partners v. Berlin,* Del.Ch., C.A. No. 9700, 1991 WL 244230 (Nov. 15, 1991) (granting plaintiff's motion for class certification); *Emerald Partners v. Berlin,* Del.Ch., C.A. No. 9700, 1993 WL 545409 (Dec. 23, 1993) (granting defendants' motion to dismiss Count I because plaintiff failed to allege particularized facts sufficient to excuse pre-suit demand, but holding demand excused as to Count III); *Emerald Partners v. Berlin,* Del.Ch., C.A. No. 9700, 1994 WL 48993 (Feb. 4, 1994) (denying a discretionary award of interim attorney's fees to plaintiff and indicating the likely extinguishment of the derivative corporate waste claims of Count III); and *Emerald Partners v. Berlin,* Del.Ch., C.A. No. 9700, 1994 WL 125047 (Mar. 30, 1994) (granting plaintiff's request for an order requiring defendants to produce handwritten notes without redactions). The present appeal stems from decisions of the Court of Chancery which granted summary judgment in favor of both individual and corporate defendants and awarded damages resulting from Emerald Partners' loss on appeal from the initial injunction invalidating the result of the stockholders' meeting. *Emerald Partners v. Berlin,* Del.Ch., C.A. No. 9700, 1995 WL 600881 (Sept. 22, 1995) (*Emerald II* ); *Emerald Partners v. Berlin,* Del.Ch., 712 A.2d 1006 (1997) (*Emerald III* ); and *Emerald Partners v. Berlin,* Del.Ch., C.A. No. 9700, 1998 WL 474195 (Aug. 3, 1998) (*Emerald IV*).

## II

■ This Court reviews a decision granting summary judgment *de novo. Arnold v. Society for Savings Bancorp, Inc.,* Del.Supr., 650 A.2d 1270, 1276 (1994). In doing so, this Court determines whether the record shows that there is no genuine issue of material fact, thus entitling the moving party to judgment as a matter of law. *Id.* In making this determination, this Court will accept the trial court's factual conclusions if they are sufficiently supported by the record and are the product of an orderly and logical deductive process. *Id.* But mixed questions of law and fact, including determinations of materiality, are also reviewed *de novo. Id.*

## A

Emerald Partners claims that the Court of Chancery erred in refusing to consider its entire fairness and best price claims directed against the merger and then granting summary judgment based on May's certificate of incorporation provision which tracks the language of 8 *Del. C.* § 102(b)(7)—Delaware's director exculpation statute. Emerald Partners argues that the Court of Chancery was "flatly incorrect" when it found that its entire fairness and best price claims were "new" and "first raised in May 1994." Emerald Partners points to language in two earlier decisions in this matter as demonstrating that the entire fairness and best price claims have existed from the beginning of the litigation and that the defendants had sufficient notice of them.

The director defendants argue that the Court of Chancery properly found that these "substantively baseless" claims were not well pleaded. They argue that the complaint does not contain any facts regarding the alleged failure to update the Bear Stearns fairness opinion or the allegedly "hurried" consummation of the merger which, they argue, comprise the principal basis of Emerald Partners' present case. Positing their argument on *Citron v. Merritt–Chapman & Scott Corp.,* Del.Ch., 409 A.2d 607 (1977), *aff'd,* Del.Supr., 407 A.2d 1040 (1979), they argue

that the court properly rejected Emerald Partners' "effort to restructure the case."

The director defendants contend that the earliest references to entire fairness date to a period of the litigation when Hall was a party and was allegedly a controlling stockholder[2] but concede in their brief that they were put on "reasonable notice that plaintiff asserted a duty of entire fairness as to them" at some point after the dismissal of Hall from the case. They contend, however, that the director defendants did not owe a duty of entire fairness because they were not on "both sides of the transaction," and Berlin, who was Hall's associate, did not participate in the merger negotiations and therefore was also not required to establish entire fairness.

The director defendants also claim that paragraph 22 of the complaint is a conclusory statement that the merger was unfair and cannot extend the factual allegations beyond March, 1988.[3] In any event, they argue that the claim that the merger's consummation breached a duty of entire fairness, and that the company was bound to conduct an auction because of a change of control, were advanced for the first time in May, 1994. They assert prejudice in that the "record" on these issues was "built long after the merger's consummation," at a time when witnesses had difficulty remembering the details of the events. Finally, they contend that these claims would be time-barred and not the "proper subject of amendment."

The Court of Chancery found that the "sole remaining count of the complaint [did] not provide a basis" for the allegations encompassing "a number of newly alleged disclosure violations as well as new theories in support of a *Revlon*[4] claim and an entire

fairness claim," all first raised in May, 1994. *Emerald II* at 8 n. 2. The court concluded that Count II was "clearly expressed as a disclosure claim relating to [May's] proxy statement" in connection with the merger. *Id.* The Court of Chancery held that Emerald Partners' "new claims, at this late stage in the proceedings, [we]re not well pleaded and, therefore [would] not be considered." *Id.* The court cited *Bowl–Mor Co., Inc. v. Brunswick Corp.*, Del.Ch., 297 A.2d 61, *app. dismissed*, Del.Supr., 297 A.2d 67 (1972) and *Merritt–Chapman*, 409 A.2d at 612, as supporting its decision.

■■ We must first review the complaint to ascertain whether Emerald Partners' entire fairness claim is subsumed within it. All that is required is that the complaint give "fair notice" of these claims. *Michelson v. Duncan*, Del.Supr., 407 A.2d 211, 217 (1979); Ch. Ct. R. 8(a). A court undertaking that analysis must afford a liberal construction to the language of the pleading. 407 A.2d at 217.

■ The relevant complaint is the Third Amended Class Action and Derivative Complaint filed January 28, 1991. Emerald Partners relies on three sections as providing fair notice with respect to its entire fairness claims, notwithstanding that the specific facts relied upon do not appear in the complaint. Emerald Partners claims that these facts[5] were not included in the complaint "because they were unknown to plaintiff at the time of filing." Emerald Partners contends that the following allegations of the complaint provided the requisite fair notice: i) "whether defendants have breached their fiduciary duties . . . of fair dealing and fair price" (paragraph

---

**2.** On January 21, 1993, the parties stipulated to the dismissal of Hall as a defendant following his bankruptcy filing in May, 1992.

**3.** Paragraph 22 of the complaint states:

[t]he Merger was completely and fundamentally unfair to plaintiff and the public stockholders of May and injured them for the sole benefit of Hall (who controlled both sides of the transaction). The timing, structure and price of the Merger was grossly unfair to the minority stockholders of May and constituted a breach of the duty of fairness owned [sic] by defendants to plaintiff and the class. In addi-

tion, the approval of the Merger was obtained from May's stockholders through use of a materially false and misleading proxy statement.

**4.** *Revlon, Inc. v. MacAndrews & Forbes Holdings, Inc.*, Del.Supr., 506 A.2d 173 (1985).

**5.** Emerald Partners specifically list as examples of such facts: i) "Hall's and Berlin's improper participation in the deliberations of the 'non-affiliated' directors;" ii) "Hall's improper contact with Bear Stearns;" iii) "the complete lack of negotiation of the exchange ratio;" iv) "the utter disregard for the committee process;" and v) "the failure to seek an updated fairness opinion."

8(b)); ii) "[t]he timing, structure and price of the Merger was grossly unfair ... and constituted a breach of the duty of fairness" (paragraph 22) [6]; and iii) "May was caused to issue a grossly excessive number of shares for Hall Corporations" (paragraph 35).

Emerald Partners' assertion that its entire fairness claim was part of its initial complaint finds support in the language of the dissenting opinion in *Emerald I* when this Court reversed the grant of a preliminary injunction and, in effect, validated the shareholder vote approving the merger. Justice Horsey was of the view that "the fairness of the merger in terms of price or exchange ratio and whether the shareholder vote ratifying the merger was fairly effected by stockholders who were fully informed" was an issue that had been raised in the Court of Chancery, but not dealt with in the grant of the motion for preliminary injunction. *Emerald I*, 552 A.2d at 496 (Horsey, J., concurring in part and dissenting in part). Although the majority in *Emerald I*, did not address the fairness of the merger in their formal opinion, their order of August 15, 1998, cautioned that "the parties to the merger may proceed at their own risk." *Id.*

Moreover, in November, 1991, more than nine months after the filing of the Third Amended Class Action and Derivative Complaint, the Court of Chancery in ruling on plaintiff's motion for class certification held that the commonality requirement was fulfilled and the class definition [7] proper when issues existed regarding the structure and execution of the merger that were common to all minority stockholders who held their stock on the date the merger was completed. *Emerald Partners*, 1991 WL 244230 at *3, 5.

 As a matter of substantive law, the circumstances attendant upon the events leading to the negotiation of the merger would appear to implicate the entire fairness standard. Hall, as Chairman and Chief Executive Officer of both May and the Hall corporations and sole owner of the Hall corporations, clearly stood on both sides of the transaction. Additionally, at the time the parties entered the proposed merger agreement in November of 1987, Hall owned 52.4% of May common stock.[8] Also, a breach of any one of the board of directors' triad of fiduciary duties, loyalty, good faith or due care, sufficiently rebuts the business judgment presumption and permits a challenge to the board's action under the entire fairness standard. *Cinerama, Inc. v. Technicolor, Inc.*, Del.Supr., 663 A.2d 1156, 1162–64 (1995); *In re Tri–Star Pictures, Inc., Litig.*, Del.Supr., 634 A.2d 319, 333 (1993).

 The Court of Chancery acknowledged that Emerald Partners' complaint and briefs cited facts that "might raise a question as to the judgment and care of the defendant directors" regarding their proxy statement disclosure decisions connected with the merger. *Emerald II* at 19–20. While this statement by the court was not a *finding* that the director defendants had breached

6. These allegations contained in i) and ii) were first added in paragraphs 8(c) and 13 of the Amended Class Action and Derivative Complaint filed on March 7, 1988, less than a week after commencement of this action.

7. The class definition consisted of all "shareholders (except defendants herein, members of the immediate family of each of the individual defendants, including trusts for the benefit of any such individual, any entity in which any of the defendants has a controlling interest, and the legal heirs, successors or assigns of any of the defendants) who held stock on August 15, 1988, the date the Merger became effective." *Emerald Partners*, 1991 WL 244230 at *2.

8. As discussed *supra*, at the time of the merger, Hall had reduced his ownership interest to 25 % of the outstanding common stock. Although a shareholder who owns less than 50% of a corporation's outstanding stock, without some additional allegation of domination through actual control of corporation conduct, is not a "controlling stockholder" for fiduciary duty purposes, Hall's stance on both sides as a corporate fiduciary, alone, is sufficient to require the demonstration of entire fairness. *See Kahn v. Lynch Communication Systems, Inc.*, Del.Supr., 638 A.2d 1110, 1113–16 (1994) (describing the establishment of controlling shareholder status and concomitant fiduciary duties); *Cinerama, Inc. v. Technicolor, Inc.*, Del.Supr., 663 A.2d 1156, 1169–70 (1995). We specifically decline to address the effect, if any, on controlling shareholder status of Hall's divestment of a portion of his ownership interest after the execution of the merger agreement but before the approval of a revised merger agreement and the shareholder vote.

their duty of care, Emerald Partners has made a sufficient showing through factual allegations that entire fairness should be the standard by which the directors' actions are reviewed. Such a showing shifts to the director defendants the burden to establish that the challenged transaction was entirely fair.

### B

The Court of Chancery refused to consider Emerald Partners' entire fairness claim as ill-pleaded and examined the disclosure claims, standing alone. We conclude that the entire fairness and disclosure claims under these circumstances were intertwined and should not have been separately considered.

Emerald Partners contends that the February 16, 1988 proxy statement distributed in connection with, and seeking shareholder approval of, the proposed merger, contained misstatements about the merger negotiation process and misstatements or omissions regarding an investment. Specifically Emerald Partners challenges the following individual recitals in the proxy statement:

i) "[i]n connection with the Merger, the Non–Affiliated Directors have frequently held separate deliberations and have relied extensively on the advice of its independent legal counsel;"

ii) "[t]he terms of the Merger, including the exchange ratio of May Common Stock for shares of the Hall Corporations, were the result of arm's-length negotiations between representatives of the Hall Corporations and the Non–Affiliated Directors;" [9] and

iii) the lack of disclosure regarding May's participation in the acquisition of

The Singer Company and the amount of May's investment in HSSM# 7 Limited Partnership reflected in the proxy statement.[10]

The Court of Chancery held that the director defendants could not be found liable as a matter of law regardless of the materiality of these alleged omissions or misstatements. *Emerald II* at 15. The court found that, throughout the relevant time period, a provision in May's certificate of incorporation protected the directors from liability for money damages for the proxy statement claims when "acting in honest pursuit of the best interests of the corporation." *Emerald II* at 15–16. The court agreed with the defendants that Emerald Partners "failed to allege or reveal facts to support a conclusion that the directors acted in a manner which excepted them from the protections" of the charter provision "in deciding upon the appropriate extent of disclosure to be made in the proxy statement." *Emerald II* at 17.

As previously noted, the Court of Chancery performed a separate analysis of both the entire fairness standard and the disclosure claim. Once the entire fairness standard has been implicated, as here, the defendants, at least initially, bear the burden of demonstrating the two basic aspects of fair dealing and fair price. *Kahn v. Lynch Communication Systems, Inc.,* Del.Supr., 638 A.2d 1110, 1115, 1117 (1994). The burden of proof on the issue of fairness may shift. This Court has identified two scenarios that can provide the basis for shifting the burden to the *plaintiff* to demonstrate that the transaction complained of was *not* entirely fair. First, an approval of the transaction by an independent committee of directors who have real bargaining power that can be exerted in dealings with a majority shareholder who

---

**9.** The director defendants emphasize the word "representatives" contained in this language and argue that Emerald Partners reads out the word "representatives" to "suit its own purposes." This language is ambiguous, since "representatives" could be read as modifying either both referenced groups or only the Hall Corporations. In these circumstances, the principle of *contra proferentum* should apply. *See SI Management L.P. v. Wininger,* Del.Supr., 707 A.2d 37, 42–43 (1998) (applying the principle to limited partnership agreement that was not a bilateral negotiat-

ed agreement). The fact that the language is ambiguous, however, does not require the conclusion that the directors knowingly misled the shareholders.

**10.** HSSM# 7 Limited Partnership was an entity that invested in Bilzerian Partners Limited Partnership I, a blind pool controlled by Paul Bilzerian. Bilzerian Partners successfully completed a leveraged hostile takeover of The Singer Company.

does not dictate the terms of the merger may supply the necessary basis for shifting the burden. *Id.* at 1117–18; *Kahn v. Tremont Corp.*, Del.Supr., 694 A.2d 422, 428 (1997); *see also 8 Del. C.* § 144(a)(1). "[I]t is the care, attention and sense of individual responsibility to the performance of one's duties . . . that generally touches on independence." *Tremont,* 694 A.2d at 430, *quoting Aronson v. Lewis,* Del.Supr., 473 A.2d 805, 816 (1984). Second, the approval of the transaction by a *fully informed* vote of a majority of the minority shareholders will shift the burden. *Rosenblatt v. Getty Oil Co.,* Del.Supr., 493 A.2d 929, 937 (1985); *see also 8 Del. C.* § 144(a)(2). In all events, "[a] condition precedent to finding that the burden of proving entire fairness has shifted in an interested merger transaction is a careful judicial analysis of the factual circumstances of each case." *Kahn v. Lynch,* 638 A.2d at 1120.

The director defendants in this case may be able to secure the burden shifting benefit by demonstrating either sufficient independent director approval or fully informed shareholder approval. But that inquiry has been foreclosed by the Court of Chancery's grant of summary judgment and the present record does not permit this Court to resolve that issue.[11]

■ The issue of the existence of a fully informed shareholder vote enforces the conclusion that dismissal of Emerald Partners' disclosure claims is inappropriate at this stage of the proceedings. Directors of Delaware corporations have a fiduciary duty

to shareholders to exercise due care, good faith and loyalty whenever they communicate publicly or directly with shareholders about the corporation's affairs. *Malone v. Brincat,* Del.Supr., 722 A.2d 5, 10 (1998). When stockholder action is requested, directors are required to provide shareholders with all information that is material to the action being requested and "to provide a balanced, truthful account of all matters disclosed in the communications with shareholders." *Id.* at 12.

■ The Court of Chancery did not decide the issue of materiality of the alleged proxy statement misstatements or omissions but focused, instead, on the statutory protection available to the directors in the context of due care claims. Since we conclude that the disclosure claims here alleged are not so categorized, the analysis falls short. Accordingly, we reverse the grant of summary judgment on the disclosure claims.

■ Although we reverse the Court of Chancery's grant of summary judgment as essentially premature on the present record, we note, for the guidance of the Court of Chancery and the parties, that the shield from liability provided by a certificate of incorporation provision adopted pursuant to 8 *Del. C.* § 102(b)(7) [12] is in the nature of an affirmative defense. *See Boeing Co. v. Shrontz,* Del.Ch., C.A. No. 11273, 1992 WL 81228 (Apr. 20, 1992); *Rothenberg v. Santa Fe Pacific Corp.,* Del.Ch., C.A. No. 11749, 1992 WL 111206 (May 18, 1992). Defendants seeking exculpation under such a provision

11. The defendants argue that in the Court of Chancery's decision dismissing Count I, a derivative claim challenging pre-Merger transactions, the court "flatly rejected [Emerald Partners'] claims regarding the supposed lack of independence of the non-affiliated directors." It is true that the court found that the complaint failed to allege particularized facts sufficient to create a reasonable doubt that the directors were disinterested and independent as to the transactions challenged in Counts I and III, neither of which directly concerned the merger. The court, however, simply employed a stricter pleading standard pursuant to Chancery Court Rule 23.1, and did not address the issue of the existence of a well functioning independent committee as it relates to an entire fairness review.

12. The Court of Chancery found that at all relevant times, the individual defendants were protected by such a provision. May's certificate of incorporation provides:

> FIFTEENTH: A director (or an advisory director) of this Corporation shall not be personally liable to the Corporation or its stockholders for monetary damages for breach of fiduciary duty as a director, except for liability (i) for any breach of the director's duty of loyalty to the Corporation or its stockholders, (ii) for acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law, (iii) under Section 174 of [the] Delaware General Corporation Law, or (iv) for any transaction from which the director derived an improper personal benefit . . .

will normally bear the burden of establishing each of its elements. Here, the Court of Chancery incorrectly ruled that Emerald Partners was required to establish *at trial* that the individual defendants acted in bad faith or in breach of their duty of loyalty. To the contrary, the burden of demonstrating good faith, however slight it might be in given circumstances, is upon the party seeking the protection of the statute. Nonetheless, where the factual basis for a claim *solely* implicates a violation of the duty of care, this Court has indicated that the protections of such a charter provision may properly be invoked and applied. *Arnold v. Society for Savings Bancorp.* Del.Supr., 650 A.2d 1270, 1288 (1994); *Zirn v. VLI Corp.,* Del.Supr., 681 A.2d 1050, 1061 (1996).

### C

·With respect to its "best price" claim, Emerald Partners contends that the complaint pleads, and the record proves, facts "sufficiently to put this case squarely within" *Paramount Communications Inc. v. QVC Network Inc.,* Del.Supr., 637 A.2d 34, 46, 48 (1994) (reiterating that this Court in *Revlon,* 506 A.2d 173, and its progeny, has ruled that when a corporation undertakes a transaction that will cause a change in corporate control, the responsibility of the directors is to obtain the "best value reasonably available for the stockholders"). The Court of Chancery refused to consider this claim on the basis that it was not well plead, and introduced for the first time in May, 1994.

 It is unclear whether the Court of Chancery's refusal to consider Emerald Partners' *Revlon* claim was done so in the context of a dismissal on the merits of the allegation or denial of amendment to the pleadings. In either event, we affirm. First, accepting all well pleaded allegations of fact as true, our review of the complaint fails to support Emerald Partners' contention as to the existence of this claim. None of the allegations of the complaint could fairly be read as providing fair notice to defendants of a "best price" claim. *Michelson,* 407 A.2d at 217; *Loudon v. Archer–Daniels–Midland Co.,* Del.Supr., 700 A.2d 135, 140 (1997). Moreover, the claim was not fairly alleged in the initial complaint and a denial of an amendment to the complaint to include this claim more than five years after the commencement of the litigation was not an abuse of discretion. *See Citron v. Merritt–Chapman & Scott Corp.;* Del.Ch. 409 A.2d 607, 612–13 (1977), *aff'd,* Del.Supr., 407 A.2d 1040 (1979).

### III

 Hall Financial assumes a separate posture in this appeal and contends that the Court of Chancery's grant of summary judgment in its favor was based on Emerald Partners' failure to plead legal or equitable fraud, the sole basis for any independent claims against it. Hall Financial notes that Emerald Partners has waived arguments attacking the trial court's ruling by virtue of not having briefed any issue relating to it. Issues not briefed are deemed waived. *Murphy v. State,* Del.Supr., 632 A.2d 1150, 1152 (1993); *Loudon,* 700 A.2d at 140 n. 3. Emerald Partners has waived any argument it had against Hall Financial by not raising the issues in their opening brief and at argument in this case tacitly conceded the merit of Hall Financial's position on appeal. Accordingly, we affirm the Court of Chancery's grant of summary judgment in favor of Hall Financial.

### IV

 We next address the claim that the ·Court of Chancery erred in ruling that the defendants had been "wrongfully enjoined" and were thus entitled to be compensated from the proceeds of the appeal bond posted by Emerald Partners for their costs and damages. We consider that claim involving the formulation and application of legal principles *de novo. Gilbert v. El Paso Co.,* Del.Supr., 575 A.2d 1131, 1142 (1990).

Emerald Partners contends that the Court of Chancery committed error, as a matter of law, when it held that the defendants had been "wrongfully" enjoined. Emerald Partners argues that because no "Delaware case or statute has ever altered or even broached the common law of recovery on injunction bonds, the binding authority on this Court is

the common law of England" which provides that an injunction is not "wrongful" because of a legal error by the trial court, but only if plaintiff made a false statement or omission in seeking the injunction. Additionally, Emerald Partners argues that strong policy concerns are implicated if the Court of Chancery was correct in its ruling because when combined with the potential protections afforded by 8 *Del. C.* § 102(b)(7), "improper conduct by corporate fiduciaries" could be permitted to go "entirely unreviewed."[13]

Emerald Partners also argues that the Court of Chancery incorrectly based its award on Hall's "estimates" reflected in his affidavit and deposition which did not constitute provable damages. Emerald Partners complains that the court did not make any specific finding that the estimates were accurate or reasonable, but instead "simply stated that 'it would be absurd to believe that HFG lost *none* of its executives' time as a result of the injunction.'"

Hall Financial counters that Emerald Partners' argument in support of following English common law ignores the "wealth of thoughtful precedent construing" the federal rule which contains identical relevant text and after which the Court of Chancery Rules were patterned.

The Court of Chancery recognized that "[n]o court in the State of Delaware has defined the phrase 'wrongfully enjoined or restrained,' as it is used in Rule 65(c)." *Emerald III,* 712 A.2d at 1008. The court acknowledged the attractiveness of the construction argued by Emerald Partners, but found that it "would run contrary to the great weight of American authority on the issue." *Id.* at 1009. The Court of Chancery

noted that Rule 65(c) is identical to its "federal counterpart" and that the federal courts have "had many occasions to construe the term 'wrongfully'" as used in the federal rule. *Id.*

In a later ruling, the Court of Chancery found that defendants had proved entitlement to the full amount of the substituted security. *Emerald IV* at 2. In considering Emerald Partners' argument that, as a matter of equity, defendants ought not to recover any damages because they sought injunctive relief in good faith and because two Justices[14] were persuaded by its argument to uphold the injunction, the court found that Emerald Partners "placed too much weight upon subjective characterization of its own actions and not enough weight upon other, objective factors." *Id.* at 4. "A plaintiff's good faith request for injunctive relief is insufficient justification for refusing to award damages to a defendant." *Id.* at 5.

Referring to *Coyne–Delany,*[15] the court listed objective factors that might support a decision to deny recovery such as "parties' resources, defendants' actions that cause material or unreasonable delay, defendants' efforts or lack of effort to mitigate damages, and changes in applicable law after a preliminary injunction has issued," as well as a finding that defendant engaged in unfair or inequitable conduct during the course of litigation. *Emerald IV* at 6. "Each case must be assessed on its own merits ... and the court must be ever mindful of the presumption in favor of awarding damages." *Id.* Applying this judicial discretion standard, the Court of Chancery held that Emerald Partners' one objective factor, "[t]wo Justices ... declin[ing] to join the majority's decision to overturn the injunction, "did not provide a

---

**13.** This Court granted leave to the National Association of Securities and Commercial Law Attorneys to file a brief *amicus curiae* on the bond issue. The *amicus* argues, in support of Emerald Partners' position, that policy concerns arising from the implications of the combination of the Court of Chancery's ruling and Section 102(b)(7) protections necessitates a holding that the determination of recovery on an injunction bond should turn only on whether the plaintiff has proceeded honestly and in good faith.

**14.** The reference to "[t]wo Justices" appears to be based on i) Justice Horsey's dissent in part

and concurrence in part in which he dissented from the majority's ruling that the supermajority voting requirement did not apply to the proposed merger, but concurred that the shareholder vote satisfied both the quorum requirement and the supermajority provision, and ii) a current member of this Court having granted the preliminary injunction as a then Vice–Chancellor. This exercise in numerology is strained, to say the least.

**15.** *Coyne–Delany Co., Inc. v. Capital Development Bd. of Illinois,* 7th Cir., 717 F.2d 385 (1983).

sufficient basis to disregard the "strong presumption in favor of recovery." *Id.* at 6–7.

The Court of Chancery articulated defendants' burden to prove by a preponderance of the evidence that the damages were proximately caused by the injunction. *Id.* at 7–8. The court found that the defendants had met their burden on their lost time of management personnel claim in the amount of $170,600, and therefore did not consider other damage claims. *Emerald IV*, at 8, 10–12.[16] The court then held that the defendants could recover $99,200 of their loss against the injunction bond. *Id.* at 12.

Chancery Court Rule 65(c) provides:

No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the Court deems proper, *for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been wrongfully enjoined or restrained.* Any security given as a condition to the issuance of a restraining order shall also constitute security for any preliminary injunction subsequently issued and requiring security.

(Emphasis supplied).

■■■ Since the Court of Chancery Rules parallel the federal rules, federal precedents are persuasive. *Mann v. Oppenheimer & Co.*, Del.Supr., 517 A.2d 1056, 1061 (1986). The Court of Chancery correctly summarized the majority federal approach that there is an implicit presumption in favor of awarding damages for a "wrongful injunction," unless good reason, evidenced by objective factors, supports a contrary view. An injunction is "wrongful" if reversed on appeal or if the enjoined party at all times had the right to do the enjoined act. *See Coyne–Delany Co., Inc. v. Capital Development Bd. of Illinois*, 7th Cir., 717 F.2d 385, 391–92 (1983); *Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 2d Cir., 910 F.2d 1049,

1054–55 (1990); *Div. No. 1, Brotherhood of Locomotive Engineers v. Consolidated Rail Corp.*, 6th Cir., 844 F.2d 1218, 1225 (1988); *Nintendo of America, Inc. v. Lewis Galoob Toys, Inc.*, 9th Cir., 16 F.3d 1032, 1036–37, *cert. denied*, 513 U.S. 822, 115 S.Ct. 85, 130 L.Ed.2d 37 (1994); *National Kidney Patients Assoc. v. Sullivan*, D.C.Cir., 958 F.2d 1127, 1134 (1992), *cert. denied*, 506 U.S. 1049, 113 S.Ct. 966, 122 L.Ed.2d 122 (1993); *State ex rel. Siegelman v. U.S.E.P.A.*, 11th Cir., 925 F.2d 385, 388–89 (1991).

■■■ Neither Emerald Partners nor the *amicus* challenge the Court of Chancery's thorough analysis of the federal precedent. Emerald Partners argues that this Court should follow the English common law, supported by the *amicus*, and both argue policy reasons dictate that this Court should impose a requirement that there be a finding that the party seeking the injunction had proceeded in bad faith before granting an award of damages for an injunction that has been reversed on appeal.

■■■ In our view, the requirement for a showing of bad faith by the applicant significantly reduces the potential of recovery for a defendant who has been injured following a wrongful injunction and thus ignores the language of Chancery Court Rule 65(c). The Rule requires that the applicant provide security for payment in the event that a defendant was "wrongfully enjoined or restrained." Rule 65(c) does not focus on the conduct of the applicant, but on the potential for harm to the enjoined or restrained party. As the *Nintendo* court stated, "good faith in the maintenance of litigation is the standard expected of all litigants." 16 F.3d at 1037. In effect, the imposition of a good faith standard adds little to the equation.[17]

■■■ Both Emerald Partners and the *amicus* appear to argue that this Court should alter application of Rule 65(c) because of the potential chilling effect in cor-

---

16. Although Emerald Partners argued in their opening brief that such damages were not "proved," they did not challenge the Court of Chancery's rulings based on authentication and hearsay grounds. Therefore these arguments are deemed waived. *Murphy*, 632 A.2d at 1152.

17. The good faith of the applicant is a relevant factor, that, coupled with other factors, may supply the court with a basis, in the exercise of its discretion, to determine that the presumption favoring an award of damages to a party who has been "wrongfully enjoined or restrained" should not be applied.

porate cases where charter provisions adopted pursuant to 8 *Del. C.* § 102(b)(7) preclude recovery for damages, and injunctive relief offers the only viable alternative to a plaintiff shareholder seeking to attack corporate wrongdoing. Chancery Court Rule 65(c) applies to the grant of any injunction or restraining order, however, not just those issued in corporate cases. Further, the judicial discretion standard, which was utilized in this case, and which we endorse, permits the Court of Chancery to look at several objective factors, including the parties' resources, in considering the equity of imposing damages in a particular case.

Moreover, the argument that there will be a diminution of effective review of director misconduct is unpersuasive. First, Section 102(b)(7) protections do not apply to violations of the fiduciary duties of good faith or loyalty. Second, shareholders have, either directly by voting to approve a Section 102(b)(7) type charter provision, or, indirectly by purchasing shares in a corporation with such a provision, chosen to employ such protections.

■ Finally, the argument that an affirmance of the Court of Chancery's ruling will chill the seeking of preliminary injunctions fails to accord sufficient confidence in our trial courts' ability to properly apply the legal standards,[18] which decreases the risk that a party will be "wrongfully enjoined."

The assumption of the risk that the Court of Chancery may issue an injunction that is subsequently reversed properly lies with the party seeking such an extraordinary remedy.

The Court of Chancery correctly concluded that defendants' had been "wrongfully" enjoined within the meaning of Rule 65(c) and were entitled to damages proven by a preponderance of the evidence as being proximately caused thereby. The record supports the Court of Chancery's determination that the defendants had proved entitlement to $99,200 in damages attributable to the force of the injunction.

In sum, the grant of summary judgment in favor of the director defendants is reversed and remanded for proceedings consistent with this opinion. The Court of Chancery's grant of summary judgment in favor of Hall Financial is affirmed. The ruling of the Court of Chancery with respect to Emerald Partners' *Revlon* claim is also affirmed. The judgment of the Court of Chancery finding that defendants were "wrongfully" enjoined and had proved entitlement to $99,200 in damages is affirmed.

---

18. A plaintiff seeking a preliminary injunction must demonstrate i) a reasonable probability of success on the merits, and ii) that absent the injunction, some irreparable harm will occur, which harm outweighs the harm defendants will suffer if the relief is granted. *Ivanhoe Partners v. Newmont Mining Corp.*, Del.Supr., 535 A.2d 1334, 1341 (1987). As the *amicus* noted, "[t]he Court of Chancery did not become the nation's premier business trial court by issuing preliminary injunctions on 'flimsy grounds.'"