HLSP HOLDINGS CORP., Plaintiff Below-Appellant,
v.
FORTUNE MANAGEMENT INC., Plaintiff Below-Appellee.
No. 374, 2009.
Supreme Court of Delaware.
Submitted: November 3, 2009.
Decided: February 15, 2010.
Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS, and RIDGELY, Justices, constituting the Court en Banc.

ORDER
Henry duPont Ridgely, Justice.
This 15th day of February 2010, upon consideration of the briefs of the parties and their contentions at oral argument, it appears to the Court that:
(1) The Superior Court granted summary judgment in favor of DefendantA-ppellee Fortune Management, Inc. ("Fortune") on its breach of contract claim on the basis that the HLSP Holdings Corp. ("HLSP") stockholders suffered any injury the breach caused, not HLSP. In addition, the Superior Court found HLSP lacked standing. HLSP contends that the Superior Court erred in granting summary judgment because HLSP has standing to pursue this claim and there is a material issue of fact as to whether Fortune's breach of the registration provision caused harm to HLSP. Even if we were to accept HLSP's argument that it, as a party to the contract, had the right to invoke the jurisdiction of the Superior Court, the trial court did not err in granting summary judgment in this case. HLSP stockholders, not HLSP, suffered any alleged harm on the facts of this case. Accordingly, we affirm.
(2) HLSP, a dissolved Puerto Rico corporation, was a private-equity management firm with its principal place of business in San Juan, Puerto Rico. Before its dissolution, HLSP had five stockholders: Jack Takacs (HLSP's sole director and president), Paul Bagley, Hermann Seiler, Gary Leonard and Donald Jackson (collectively, the "Stockholders"). Fortune, a Delaware corporation, has its principal place of business in Zug, Switzerland, and its stock is publicly traded on the Frankfurt Stock Exchange.
(3) In the summer of 2005, HLSP and Fortune entered into negotiations regarding a potential business combination of the two entities. On July 7, 2005, HLSP and Fortune entered into an agreement (the "Agreement") under which HLSP would transfer its private-equity assets (constituting substantially all of HLSP's assets) to a newly formed Fortune subsidiary in exchange for 33,584,600 shares of Fortune common stock (the "Stock") to be issued and delivered to HLSP (the "Exchange"). Section 3.6 of the Agreement (the "Registration Clause") provides:
Following the Closing Date, Fortune shall take all necessary action, including the drafting of a registration statement and prospectus as well as contacting of an investment bank to cause all the shares of Fortune Common Stock issued and transferred to HLSP under Section 2.1 of this Agreement, [to be] registered and freely tradable on the Frankfurt Stock Exchange. HLSP (or its shareholders) may elect to have all or a portion of such shares of Fortune registered in one or more registration statements (Prospectus) to be prepared and filed as and when HLSP (or its shareholders) may request in writing to the board of directors of Fortune.
(4) The parties further agreed that the Exchange was to constitute a Type-C tax-free reorganization under Section 368(a)(1)(c) of the Internal Revenue Code of 1986 and Section 1112(g)(1)(C) of the Puerto Rico Internal Revenue Code of 1994. Section 2.1 of the Agreement provides:
. . .The parties intend this exchange to constitute a tax-free reorganization within the meaning of Section 368(a)(1)(c) of the [Internal Revenue] Code and Section 1112(g)(1)(c) of the Puerto Rico [Internal Revenue] Code in that HLSP is transferring substantially all of its assets and business to F-Sub solely in return for voting shares of Fortune, whereupon HLSP shall proceed to liquidate and distribute such shares of Fortune, as well as any other remaining assets that it holds, to its shareholders in exchange for their shares of HLSP.
Section 3.8 of the Agreement (the "Liquidation Clause") provides: "[p]romptly following the Closing Date, HLSP and its shareholders shall take all necessary action to cause the liquidation of HLSP in accordance with applicable law."
(5) On or about September 5, 2005, Fortune transferred the Stock into HLSP's account. In February 2006, Mr. Takacs wrote to Fortune on behalf of HLSP and requested that Fortune begin the registration process for the Stock. He stated:
Pursuant to Section 3.6 of the Agreement, notice is hereby given to the Board of Directors of Fortune of the election by HLSP to have the Fortune Common Stock registered and thereby become freely tradable on the Frankfurt Stock Exchange. Based upon the foregoing and the terms of Section 3.6 of the Agreement, Fortune is obligated to take all necessary action to cause the registration of such shares. In addition, it should be noted, that, pursuant to Section 3.6 of the Agreement, promptly following the date of the Agreement, Fortune was (and continues to be) obligated to take the action called for herein.[1]
(6) In February 2006, HLSP's stockholders agreed to distribute the Stock in exchange for all HLSP stock held by them as follows: Jack Takacs  12,313,255 shares, Hermann Seiler  8,060,860 shares, Paul Bagley  7,387,953 shares, Donald Jackson  4,925,302 shares, Gary Leonard  500,007 shares. The remaining 397,223 shares were retained by HLSP to be transferred to its creditors for legal and other services and expenses and costs incurred in connection with the Agreement and liquidation process. The Stock was distributed to HLSP's stockholders in kind according to the above allocation in early March 2006. The Stock allocated to HLSP's creditors was distributed in kind by September 11, 2006.
(7) HLSP contends that the shares were not registered and freely tradable until August 24, 2007, and Fortune asserts that the shares were registered and freely tradable in February 2007. For the purpose of the motion for summary judgment, the Superior Court accepted, as it must, HLSP's assertion that the Stock was not registered until August 2007.
(8) On August 19, 2008, HLSP filed suit against Fortune in the Superior Court. It alleged Fortune breached the Agreement when it did not register the Stock within a reasonable time after the July 7, 2005 closing. HLSP's complaint acknowledged that after closing Fortune would need to take certain steps to have those shares registered, including drafting a registration statement and prospectus, and contracting with an investment bank to finalize all aspects of registration. Further, HLSP's complaint acknowledges that Fortune would need "a reasonable period of time" to complete these steps.
(9) The Superior Court granted summary judgment for Fortune, holding that HLSP had failed to state a claim because it did not allege facts upon which a jury could reasonably conclude it suffered injury. It further held that any potential injury arising from delays in registration of the Stock were suffered by the shareholders of HLSP, and not HLSP itself. This appeal followed.
(10) HLSP contends that the Superior Court erred in granting summary judgment in favor of Fortune because it has standing and there is an issue of material fact as to whether HLSP suffered an injury as a result of Fortune's breach. We review the Superior Court's decision granting summary judgment de novo, to determine whether the record shows there is no genuine issue of material fact.[2] "[T]he facts of the record, including any reasonable hypotheses or inferences to be drawn therefrom, must be viewed in the light most favorable to the non-moving party."[3]
(11) "Standing is the requisite interest that must exist in the outcome of the litigation at the time the action is commenced."[4] We have previously explained the concept:
The concept of "standing," in its procedural sense, refers to the right of a party to invoke the jurisdiction of a court to enforce a claim or redress a grievance. It is concerned only with the question of who is entitled to mount a legal challenge and not with the merits of the subject matter of the controversy. In order to achieve standing, the plaintiff's interest in the controversy must be distinguishable from the interest shared by other members of a class or the public in general. Unlike the federal courts, where standing may be subject to stated constitutional limits, state courts apply the concept of standing as a matter of self-restraint to avoid the rendering of advisory opinions at the behest of parties who are "mere intermeddlers."[5]
(12) "To establish standing, a plaintiff or petitioner must demonstrate first, that he or she sustained an `injury-in-fact'; and second, that the interests she or he seeks to be protected are within the zone of interests to be protected."[6] "The traditional concept of standing confers upon the corporation the right to bring a cause of action for its own injury."[7] Here, the Agreement established a contractual relationship between HLSP and Fortune. Accordingly, if Fortune breached the Agreement, HLSP could invoke the jurisdiction of the Superior Court for any injury it suffered as a result of this breach. In this case, the Agreement required HLSP to distribute the Fortune stock to HLSP stockholders. HLSP has not presented evidence that it, as opposed to HLSP stockholders, was injured by any alleged breach of the Agreement by Fortune.
(13) HLSP argues there is an issue of material fact as to whether Fortune breached the Agreement before HLSP distributed the Stock. HLSP argues that the Superior Court improperly focused on the market price movements of Fortune's common stock instead of the timing of Fortune's breach of the Registration Provision. Essentially, HLSP contends that it suffered injury because Fortune's breach resulted in a deprivation of its range of elective action under Duncan v. TheraTx, Inc.[8]
(14) In Duncan, we answered a certified question by the United States Court of Appeals for the Eleventh Circuit concerning the appropriate method of calculating contract damages where an issuer's temporary suspension of a shelf registration prevented trading by stockholders in violation of the terms of a merger agreement.[9] There, shareholders in PersonaCare, Inc. received unregistered shares in TheraTx, Inc. as a result of a merger between the two companies. When TheraTx did not register the shares, the former PersonaCare shareholders sued TheraTx in the District Court for the Northern District of Georgia for breach of the merger agreement. We held that the contract damages were measured by the difference between the highest intermediate price of the shares during a reasonable time at the beginning of the restricted period, which functions as an estimate of the price that the stockholders would have received if they had been able to sell their shares and the average market price of the shares during a reasonable period after the restrictions were lifted.[10]
(15) Relying on Duncan, HLSP contends that it suffered injury when Fortune failed to register the shares issued as consideration pursuant to the Agreement. However, unlike Duncan, HLSP, rather than the individual shareholders, filed this suit. It is undisputed that after the Exchange, HLSP distributed the Fortune shares in kind, as the Agreement required. On these facts, any potential loss suffered by Fortune's alleged failure to register the Stock pursuant to the terms of the Agreement was suffered by HLSP's shareholders, not HLSP itself. Simply put, HLSP served merely as a conduit for what in fact became an in kind distribution of Fortune stock to others. The Superior Court did not err in granting summary judgment in favor of Fortune on HLSP's claims.
NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.
NOTES
[1] Mr. Takacs was the President of Fortune both when he sent this letter and during part of the time HLSP alleges Fortune failed to comply with the Agreement as he did not leave until mid-2006.
[2] Emerald Partners v. Berlin, 726 A.2d 1215, 1219 (Del. 1999); Williams v. Geier, 671 A.2d 1368, 1375 (Del. 1996).
[3] Williams, 671 A.2d at 1375-76.
[4] Gen. Motors Corp. v. New Castle County, 701 A.2d 819, 823 (Del. 1997).
[5] Schoon v. Smith, 953 A.2d 196, 200 (Del. 2008) (quoting Stuart Kingston, Inc. v. Robinson, 596 A.2d 1378, 1382 (Del. 1991)).
[6] Dover Historical Soc. v. City of Dover, 838 A.2d 1103, 1110 (Del. 2003).
[7] Schoon, 953 A.2d at 201.
[8] 775 A.2d 1019, 1022 (Del. 2001).
[9] Id. at 1020.
[10] Id.