COURT OF CHANCERY
OF THE
STATE OF DELAWARE

KATHALEEN ST. JUDE MCCORMICK
CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

December 11, 2025

Bruce E. Jameson
J. Clayton Athey
John G. Day
Christine N. Chappelear
Prickett, Jones & Elliott, P.A.
1310 North King Street
Wilmington, Delaware 19801

Eric A. Veres
S. Michael Blochberger
Abrams & Bayliss LLP
20 Montchanin Road, Suite 200
Wilmington, Delaware 19807

Mary S. Thomas
Thomas Law LLC
1521 Concord Pike, Suite 301
Wilmington, DE 19803
(302) 647-1203

Re: *Kuramo Capital Management, LLC, et al. v. Seruma, et al.*,
C.A. No. 2021-0323-KSJM

Dear Counsel:

This case arises from a dispute over the parties' relative ownership interests of entities formed to hold interests in a palm oil production company, Plantations et Huileries de Congo SA ("PHC"), which is located and minority owned by the Democratic Republic of Congo ("DRC"). Defendant Larry Seruma managed and held interests in the entities at issue. The plaintiffs, referred to collectively as "Kuramo," filed suit in April 2021 claiming that Seruma and his affiliates, referred to as the "Nile Parties," breached fiduciary duties owed to Kuramo.[1] Kuramo took aim at a

---

[1] Other terms have the meaning ascribed to them in the Post-Trial Memorandum Opinion. Dkt. 308, *Kuramo Cap. Mgmt., LLC v. Seruma*, 2024 WL 1888216 (Del. Ch. Apr. 30, 2024).

host of Seruma's actions, but primarily challenged a restructuring transaction that Seruma orchestrated to purportedly acquire a majority interest in PHC.

The court issued a long Post-Trial Memorandum Opinion (the "Opinion") in April 2024.[2] The Opinion found that Seruma breached his duty of loyalty.[3] The Opinion also granted the parties leave to submit letters identifying any unaddressed arguments or claims.[4] The court issued a Letter Decision on September 6, 2024, addressing most of the remaining arguments.[5] As of the Letter Decision, the only remaining issue concerned remedies.

To close this case, Kuramo requests an in-kind redemption of its investments in PHC and GenAfrica investments.[6] The briefing on remedies spawned motions to strike and intervene.[7] This decision determines the appropriate remedy and the two attendant motions.

The court assumes knowledge of the background of this action.[8] As a quick reminder, the court found that Seruma breached his fiduciary duties as follows:

- Seruma attempted a corporate coup of PHC. After Kuramo refused to appoint Seruma as director general of PHC, Seruma took matters into his own hands.[9] Waiting until Kuramo's principals traveled hundreds

---

[2] *Kuramo*, 2024 WL 1888216.

[3] *Id.* at *41.

[4] *Id.* at *43.

[5] Dkt. 318 (Letter Decision).

[6] Dkt. 323 (Kuramo's Suppl. Post-Trial Opening Br.) at 2.

[7] Dkts. 328, 333.

[8] *See Kuramo*, 2024 WL 1888216.

[9] *Id.* at *12.

of miles away, under the guise of "risk management," and with one-day notice, Seruma scheduled an emergency board meeting to elect a new director general.[10]

- To stack his election odds, Seruma sent unsigned resignations letters from two board members to the chairman.[11] He then purported to install replacements.[12] Ultimately, he failed to install himself as director general.[13] Undeterred, he remained in the DRC to try to seize control of PHC.[14]

- Separately, Seruma attempted to transfer the majority the parties' investment in PHC to himself. Through a series of deceptive maneuvers, he grew his 1 percent minority interest to a controlling stake.[15]

- To execute his scheme, Seruma lied to Kuramo and secretly contributed his interest in Ugandan farmland into the entity holding PHC.[16] This diluted Kuramo's interests and increased Seruma's.[17]

- Seruma next advanced a theory, without supporting evidence, that Kuramo agreed to a 60/40 split of an entity formed to help restructure PHC's debts, KN Agri.[18] And according to Seruma, because Kuramo failed to fund and convert a bridge loan, they forfeited their interests in the entity.[19]

---

[10] *Id.*

[11] *Id.* at *13.

[12] *Id.*

[13] *Id.*

[14] *Id.*

[15] *Id.* at *14.

[16] *Id.* at *14–17.

[17] *Id.* at *15.

[18] *Id.* at *20.

[19] *Id.* at *19, 30.

- At trial, the court found no evidence that Kuramo refused to fund the bridge loan[20] and that Kuramo owned 97% (not 40%) of KN Agri.[21]

- Meanwhile, PHC lenders declined to work with Seruma,[22] who failed the lenders' know-your-customer review.[23]

## A. The In-Kind Redemption

In 1939, the Delaware Supreme Court explained equitable remedies for fiduciary breaches:

> The rule, inveterate and uncompromising in its rigidity, does not rest upon the narrow ground of injury or damage to the corporation resulting from a betrayal of confidence, but upon a broader foundation of a wise public policy that, for the purpose of removing all temptation, extinguishes all possibility of profit flowing from a breach of the confidence imposed by the fiduciary relation.[24]

As this passage reflects, "Delaware law dictates that the scope of recovery for a breach of the duty of loyalty is not to be determined narrowly."[25] "Once disloyalty has been established, the standards. . . require that a fiduciary not profit personally from his conduct, and that the beneficiary not be harmed by such conduct."[26] Additionally,

---

[20] *Id.* at *22.

[21] *Id.* at *20–21.

[22] *Id.* at *22.

[23] *Id.* at *22–23.

[24] *Guth v. Loft, Inc.*, 5 A.2d 503, 510 (Del. 1939).

[25] *Thorpe by Castleman v. CERBCO, Inc.*, 676 A.2d 436, 445 (Del. 1996).

[26] *Id.*

"courts will not construe a contract as taking away a common law remedy unless that result is imperatively required."[27]

Kuramo requests an in-kind redemption of the parties' investments in PHC and GenAfrica investments.[28] According to Kuramo, this request would clear the cloud of title that Seruma has placed over the investments, and allow Kuramo to realize the value of their PHC and GenAfrica investments.[29] Kuramo also raises concerns with the alternative—a sale process—that would further delay resolution, and empower and reward a faithless fiduciary.[30] In the latest round of briefing, Kuramo makes a compelling argument that the equities strongly favor an in-kind redemption.[31]

---

[27] *Gotham P'rs, L.P. v. Hallwood Realty P'rs, L.P.*, 817 A.2d 160, 176 (Del. 2002) (internal quotation marks omitted) (quoting 17A Am.Jur.2d Contracts § 727 (1991)).

[28] Kuramo's Suppl. Post-Trial Opening Brief at 2.

[29] *Id.* at 8–10.

[30] *Id.* at 5–8. During oral argument, the Nile Parties belatedly proposed a custodian-led sale as an alternative to a Seruma-led sale or an in-kind redemption. Dkt. 351 (9/16/25 H'rg Tr.), at 46:3–12. The Nile Parties waived this request by failing to brief it despite multiple opportunities. *See* Dkts. 322 (The Nile Parties' Supplemental Post-Trial Br.), 326 (The Nile Parties' Supplemental Answering Br.); *Emerald P'rs v. Berlin*, 726 A.2d 1215, 1224 (Del. 1999) ("Issues not briefed are deemed waived."). Although a custodian-led sale would eliminate some of the process concerns raised by Kuramo, it would not address them all. The bottom line is that the one person who benefits from a sale, not an in-kind redemption, is Seruma. For reasons discussed below, it is not appropriate to give Seruma the benefit of a remedy given the court's findings.

[31] *See* Kuramo's Supplemental Post-Trial Br. at 3–13.

The Nile Parties dispute Kuramo's entitlement to an in-kind redemption based on their interpretation of the LLC Agreements.[32] They first point to Section 18-605 of the Delaware LLC Act, which provides that "[e]xcept as provided in a limited liability company agreement, a member . . . has no right to demand and receive any distribution from a limited liability company in any form other than cash."[33] Nile argues that because the LLC Agreements at issue do not provide for an in-kind distribution, Kuramo cannot request one as a remedy for Seruma's breach of fiduciary duties.[34]

The Opinion and Letter Decision already revealed the flaw in the Nile Parties' argument.[35] As I stated in the Opinion, "[o]nce a fiduciary breach has been established, this court's powers are complete to fashion any form of equitable and monetary relief as may be appropriate."[36] As I noted in the Letter Decision, "Delaware law dictates that the scope of recovery for a breach of the duty of loyalty is not to be determined narrowly."[37] Without contractual support, one party cannot demand an in-kind redemption when another breaches their fiduciary duty. But a

---

[32] *See* The Nile Parties' Suppl. Post-Trial Answering Br. at 5–10.

[33] *Id.* at 4 (citing 6 *Del. C.* § 18-605).

[34] *Id.* at 6–10.

[35] *See* Letter Decision at 2–4 (discussing the parties' contracts and this court's equitable powers).

[36] *Kuramo*, 2024 WL 1888216, at *41 (quoting *In re Dole Food Co., Inc S'holder Litig.*, 2015 WL 5052214, at *44 (Del. Ch. Aug. 27, 2015) (citation modified)).

[37] Letter Decision at 4 (quoting *Thorpe*, 676 A.2d at 445).

court can. The LLC Agreements are silent as to appropriate remedies for a fiduciary breach.[38] And "even if a contract specifies a remedy for breach of that contract, a contractual remedy cannot be read as exclusive of all other remedies if it lacks the requisite expression of exclusivity."[39]

The LLC Agreements do not foreclose Kuramo's preferred remedy here. Those agreements contemplate specific procedures for when and how Kuramo can withdraw funds, but those procedures do not explicitly prevent in-kind redemptions.[40] Nor do they address in-kind redemptions as a remedy for breach or otherwise designate an exclusive remedy for disputes among the members.

The Nile Parties' remaining arguments against in-kind redemptions also fail. The Nile Parties cite *Neal v. Alabama By-Products Corp.* to argue an in-kind redemption is inappropriate because a remedy must relate to the legal rules at issue.[41] Their premise is correct, but the conclusion does not follow. In *Neal*, the plaintiff failed to meet the demand requirement for appraisal under Section 262(a).[42] The plaintiff requested that the court grant interest on the cash they would have

---

[38] *See* JX-1609 (Amended Nile LLC Agreement); JX-1448 (Nile Global Agreement); JX-1227 (Series B Supplement).

[39] *Gotham P'rs*, 817 A.2d at 176 (citation modified).

[40] *See* Letter Decision at 3–4.

[41] Nile Parties' Supplemental Post-Trial Br. at 11 (citing *Neal v. Alabama By-Products Corp.*, 1988 WL 105754, at *5 (Del. Ch. Oct. 11, 1988)).

[42] *Neal*, 1988 WL 105754, at *3–5.

received from the merger absent their failed demand.[43]  The court explained that "[e]quity, as a general rule, follows the law,"[44] and refused to use its equitable powers to grant interest because neither Section 262 nor the parties' contract allowed it.[45] Unlike *Neal*, the remedy here seeks to redress a breach of the duty of loyalty, not a statutory remedy.  As discussed above, disloyal conduct is different and warrants flexing equitable powers.

Both sides cite *Paige Capital Management, LLC v. Lerner Master Fund, LLC*,[46] but it is uninformative.  There, a hedge fund manager exercised a "Gate Provision" in a partnership agreement to prevent a fund from redeeming its investment.[47]  "The central issue [was] contractual" and the court held the manager breached.[48]  In the alternate, the court also held the manager breached her duty of loyalty.[49]  As a result, the court ordered the manager to return the investor's capital with interest.[50]  The court never addressed whether to grant an in-kind redemption because the hedge fund held mostly cash,[51] and the suit was filed because the manager failed to allocate

---

[43] *Id.* at *5.

[44] *Id.*

[45] *Id.* at *5–6.

[46] 2011 WL 3505355 (Del. Ch. Aug. 8, 2011).

[47] *Id*. at *1.

[48] *Id.* at *2.

[49] *Id.*

[50] *Id.* at *43.

[51] *Id.* at *6 ("As noted, [the manager] had largely kept the Fund in cash. . . .").

capital.[52] The court never considered whether to order an in-kind redemption. *Paige* does not dictate the outcome here.

The Nile Parties emphasize that Kuramo has not cited a single decision granting in-kind redemption without explicit contractual authorization.[53] But as *Neal* states, a "lack of precedent is not a bar to the exercise of this Court's equitable powers."[54] And that makes sense. To discourage disloyalty, this court must have discretion to use its equitable power to craft a remedy corresponding to a defendant's breach. Plus, the lack of precedent is unsurprising, given the unusually brazen nature of Seruma's breaches.

In sum, Kuramo makes a compelling argument for an in-kind redemption, and the Nile Parties' legal arguments against that remedy fail. The court thus awards Kuramo an in-kind redemption of the PHC and GenAfrica investments. This remedy ensures Seruma is not enriched for his breach of loyalty. And it allows Kuramo to do what it does best: manage African investments. The parties must meet and confer to submit a draft final order consistent with this decision.

B.    The Motion to Intervene

In a motion to intervene, a party must have "(a) timely moved to intervene, (b) in order to protect a property interest at issue in the case, (c) that would be impaired

---

[52] *See id.*

[53] *See* The Nile Parties' Suppl. Reply Br. at 2, 14, 15, 27.

[54] *Neal*, 1988 WL 105754, at *5.

by the disposition of the action, (d) under circumstances where their interests are not adequately represented by the existing parties."[55]

Owl Creek's motion is too late. It fails the first factor. "The timeliness determination is a fact specific analysis that rests in the sound discretion of the trial court."[56] Plaintiffs raised the in-kind redemption issue in their pre-trial brief, and it has resurfaced throughout the case. Yet now Owl Creek seeks to intervene on a limited basis to protect its interests as a creditor. This eleventh hour intervention is not timely.

The motion to intervene is denied.

## C.    The Motion to Strike

At oral argument, the parties failed to address plaintiffs' motion to strike. It is moot given I have granted plaintiffs' request for an in-kind redemption. The motion to strike is denied.

IT IS SO ORDERED.

Sincerely,

*/s/ Kathaleen St. Jude McCormick*

Chancellor

cc:    All counsel of record (by *File & ServeXpress*)

---

[55] *GMF ELCM Fund L.P. v. ELCM HCRE GP LLC*, 2021 WL 4313430, at *10 (Del. Ch. Sep. 22, 2021) (citation modified).

[56] *Id.* (internal quotation marks omitted) (quoting *Great Am. Leasing Corp. v. Republic Bank*, 2003 WL 22389464, at *1 (Del. Ch. Oct. 3, 2003)).