OF THE
STATE OF DELAWARE

BONNIE W. DAVID
MAGISTRATE IN CHANCERY

COURT OF CHANCERY COURTHOUSE
34 THE CIRCLE
GEORGETOWN, DE 19947

Final Report: June 17, 2024
Date Submitted: June 14, 2024

Eric M. Andersen, Esquire
Anderson Sleater Sianni LLC
Two Mill Road, Suite 202
Wilmington, Delaware 19806

Christopher B. Chuff, Esquire
Emily L. Wheatley, Esquire
Tyler R. Wilson, Esquire
Troutman Pepper Hamilton Sanders LLP
Hercules Plaza, Suite 5100
1313 Market Street, PO Box 1709
Wilmington, Delaware 19899

RE:  *Hideaki Honma v. Mark Schacknies, et al.*,
 C.A. No. 2024-0084-BWD

Dear Counsel:

In 2021, non-party MLS Technology Holdings, LLC acquired Remine, Inc. ("Remine" or the "Company") for an aggregate $53.5 million (the "Merger"). Plaintiff, a Remine common stockholder, alleges that the Merger was approved by a majority of directors affiliated with the Company's preferred stockholders that wished to trigger their liquidation preference, favoring the preferred stockholders' interests over the common stockholders'. The parties agree, for purposes of this motion to dismiss, that entire fairness is the standard of review through which the Court must evaluate the Merger. But because Plaintiff's pleading fails to allege any facts from which the Court can infer that the Merger price conceivably was unfair to

the common stockholders, I recommend that the Court grant the motion and dismiss the complaint.  This is a final report.

## I.     BACKGROUND

### A.     The Parties And Relevant Non-Parties

Before the Merger, Remine was a Delaware corporation that provided customers with a software platform and related services designed to connect home buyers, sellers, real estate agents, multiple listing services ("MLSs"), and lenders on a single platform.  Verified Compl. [hereinafter, "Compl."] ¶¶ 1, 8, Dkt. 1.  Remine's largest customers were MLSs.  *Id*. ¶ 20.

From 2018 through 2020, the Company raised capital by issuing three series of convertible preferred stock: Series A, Series A-1, and Series B.  *Id*. ¶ 21.  The Second Amended and Restated Certificate of Incorporation of Remine (the "Certificate") granted holders of preferred shares certain contractual rights, including dividend rights, the right to be treated on an as-converted basis in certain transactions, and a liquidation preference triggered upon (among other things) a merger of the Company.  *See id*. ¶ 22; *see also* Defs.' Op. Br. In Supp. Of Mot. To Dismiss [hereinafter, "OB"], Ex. A Art. 4 § B, Dkt. 17.

At the time of the Merger, Remine's board of directors (the "Board") included Defendants Mark Schacknies, Jonathan Spinetto, Ron Shah, Saagar Kulkarni, and

Phil Swift. Schacknies was the Company's President, Chief Executive Officer, and Chief Financial Officer, and Spinetto was its Chief Operating Officer and Secretary. Compl. ¶¶ 10-14. They both owned Remine common stock. *Id*. ¶¶ 10-14. Shah and Kulkarni were "affiliates" of Stripes IV LP ("Stripes"), a venture capital firm that owned shares of Series A and Series B preferred stock. *Id*. ¶¶ 12-13, 16. Swift was an "affiliate" of Ayrshire Real Estate Technologies LP ("Ayrshire"), a venture capital firm that owned shares of Remine common stock and Series A and Series B preferred stock. *Id*. ¶¶ 14, 16.

### B. The Merger

Although Remine "doubled revenues" between 2018 and 2019, as of 2020, it "had yet to generate a profit" and was balance sheet insolvent. Compl. ¶ 23; *see also id*., Ex. A at 13.

In late 2020 or early 2021, the Company initiated a sale process. Compl. ¶¶ 24, 28. Aided by a financial advisor, Remine conducted a "pre-signing market check" in which it "disclosed to its largest customers . . . that the Company was for sale." *Id*. ¶ 24. That process "failed with all potential bidders backing out of the process by the Summer of 2021[,]" as "no one wanted to buy the Company." *Id*. ¶ 28. "As a result, the Company went into a tailspin and missed its 2021 revenue forecasts[,]" such that "the Company was set on a path to run out of cash by the end

of 2021." *Id*. ¶¶ 28-29; *see also id*. ¶ 28 ("Without a refinancing of the Company's debts or further funding, the Company would be out of cash by year-end.").

"So that the Company's largest customers would not lose access to [Remine's] technology, [they] formed a joint venture . . . to acquire the Company." *Id*. ¶ 29. On October 15, 2021, the Board approved an Agreement and Plan of Merger (the "Merger Agreement") through which MLS Technology Holdings, LLC—a joint venture of five MLSs—would acquire Remine through its subsidiary, MLS Technology Intermediate Holdings, Inc., for an aggregate $53.5 million, subject to certain adjustments. *Id*. ¶ 1; *see also id*., Ex. A at 46, 49.

Under the Merger Agreement, the parties agreed that immediately prior to closing, Remine stockholders would roll over a portion of their shares in exchange for Series A Units and Series B Units of MLS Technology Holdings, LLC ("Rollover Units"), with Stripes and Ayrshire holding their units directly, and stockholders other than Stripes and Ayrshire holding their units indirectly through another entity, RM Rollover Holdings, LLC. Compl., Ex. A at 47-53.

Under the Certificate, Remine's preferred stockholders were entitled to a liquidation preference greater than the aggregate $53.5 million merger price; however, the Company's Series A preferred stockholders agreed to reduce their liquidation preference from 2x to 1.07x of the original Series A issue price so that in

the Merger, each share of Remine common stock would be exchanged for (i) $0.03 in cash contributed at closing to the operating fund of RM Rollover Holdings, LLC, and (ii) $0.61 in Rollover Unit value. *See* Compl. ¶ 30 ("Without this amendment, the Common Stockholders' share of the Merger Consideration in connection with the transaction would equal zero."). In addition, under the Merger Agreement,

- each share of Series A and Series A-1 preferred stock would be exchanged for (i) $6.87 in cash, with $0.18 contributed at closing to the operating fund of RM Rollover Holdings, LLC (except for Stripes and Ayrshire), (ii) $3.72 in Rollover Unit value, and (iii) $2.40 in value under a term promissory note from MLS Technology Holdings, LLC ("Topco Note Principal Value"); and

- each share of Series B preferred stock would be exchanged for (i) $5.64 in cash, with $0.01 contributed at closing to the operating fund of RM Rollover Holdings, LLC (except for Stripes and Ayrshire), (ii) $0.31 in Rollover Unit value, and (iii) $2.02 in Topco Note Principal Value. *Id*. ¶¶ 3-5.

The Merger was approved by a majority of the Company's common stockholders, as well as holders of a majority of the Series A preferred stock and Series B preferred stock outstanding voting together as a single class. Compl. ¶¶ 6, 33-35.

## C. Procedural History

More than two years after the Merger, on January 31, 2024, plaintiff Hideaki Honma ("Plaintiff"), a Remine common stockholder, initiated this action through the filing of a Verified Complaint (the "Complaint"). Dkt. 1. The Complaint alleges that Defendants breached their fiduciary duties in connection with the Merger.

On March 4, 2024,[1] Defendants moved to dismiss the Complaint (the "Motion"), and on April 12, 2024, Defendants filed their opening brief in support of the Motion. Dkt. 17. On May 20, 2024, Plaintiff filed an answering brief in opposition to the Motion. Pl.'s Ans. Br. In Opp'n Of Mot. To Dismiss [hereinafter, "AB"], Dkt. 19. On June 10, 2024, Defendants filed a reply brief in further support of the Motion. Defs.' Reply Br. In Supp. Of Mot. To Dismiss [hereinafter, "RB"], Dkt. 21. The Court heard oral argument on the Motion on June 14, 2024. Dkt. 23.

## II. ANALYSIS

Defendants have moved to dismiss the Complaint under Court of Chancery Rule 12(b)(6) for failure to state a claim upon which relief may be granted. When reviewing a motion to dismiss under Rule 12(b)(6), Delaware courts "(1) accept all well pleaded factual allegations as true, (2) accept even vague allegations as 'well

---

[1] This action was reassigned to me at the parties' request on March 4, 2024. Dkt. 13.

pleaded' if they give the opposing party notice of the claim, [and] (3) draw all reasonable inferences in favor of the non-moving party . . . ." *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs. LLC*, 27 A.3d 531, 535 (Del. 2011). "[T]he governing pleading standard in Delaware to survive a motion to dismiss is reasonable 'conceivability.'" *Id*. at 537.

For purposes of the Motion, Defendants agree that entire fairness is the standard of review through which the Court must evaluate the Merger, in light of Plaintiff's allegations that a majority of Remine's directors were not disinterested and independent with respect to that transaction.[2]  *See, e.g., In re Trados Inc.*

---

[2] This report addresses Plaintiff's claims for breach of the duty of loyalty.  To the extent the Complaint alleges that Defendants breached their duty of care, *see* Compl. ¶¶ 37-39, those breaches are exculpated.  OB, Ex. A Art. 9.  *See, e.g., Constr. Indus. Laborers Pension Fund v. Bingle*, 2022 WL 4102492, at *5 n.59 (Del. Ch. Sept. 6, 2022) ("T]hough the Complaint's count indicates that the claim includes a breach of the fiduciary duty of care (among others), I do not address duty of care here because [the company]'s charter contains an exculpatory provision insulating directors from liability for duty of care breaches."), *aff'd*, 297 A.3d 1083 (Del. 2023).  At oral argument, Plaintiff noted that two of five directors were also officers, but his briefing did not make this argument.  *See Avande, Inc. v. Evans*, 2019 WL 3800168, at *8 n.103 (Del. Ch. Aug. 13, 2019) (finding the plaintiff "did not fairly raise in its opening brief that it was seeking to recover damages from [a defendant] in his capacity as an officer under a due care theory").  *See also* Compl. ¶ 37 ("As *directors* of Remine, Schacknies, Spinetto, Shah, Kulkarni and Swift occupied a position of trust and confidence such that they owed fiduciary duties to Plaintiff and the other common stockholders of Remine." (emphasis added)).

*S'holder Litig.*, 2009 WL 2225958, at *7 (Del. Ch. July 24, 2009) (holding that a merger conceivably was subject to entire fairness review where it was approved by a majority of directors allegedly aligned with preferred stockholders whose "interests diverged from the interests of the common stockholders"). They argue that the Complaint nevertheless fails to state a claim upon which relief may be granted because it does not allege facts from which the Court can infer that the Merger price was unfair. OB at 10; RB at 2-3. Upon review of Plaintiff's unusual pleading, I agree.

"Entire fairness is not . . . a free pass to trial. As Chancellor Allen emphasized in *Solomon v. Pathe Communications Corp.*, 'a plaintiff must do more than allege that a transaction is a self-interested one in order to state a claim.'" *In re Hennessy Cap. Acq. Corp. IV S'holder Litig.*, 2024 WL 2799044, at *9 (Del. Ch. May 31, 2024) (quoting *Solomon v. Pathe Commc'ns Corp.*, 1995 WL 250374, at *6 (Del.

---

The Complaint also alleges a breach of the directors' disclosure obligations, which arise from their duties of care and loyalty. If Plaintiff intended to bring that claim separate from his challenge to the fairness of the Merger, it fails because the Complaint does not allege that misdisclosure created a distinct, cognizable harm. *See O'Reilly v. Transworld Healthcare, Inc.*, 745 A.2d 902, 917, 919 (Del. Ch. 1999) ("In the event that the claim for breach of the fiduciary duty of disclosure arises from the misdisclosure of wrongdoing that underlies an accompanying claim challenging the fairness of the same transaction, the plaintiff will have to plead that the breach of the duty of disclosure created a cognizable harm discrete from the harm that the underlying wrongdoing caused, as well as the requisite causation and damages to support its request for more than nominal damages.").

Ch. Apr. 21, 1995)). "Delaware law is clear that even where . . . entire fairness review is in play . . . plaintiff must make factual allegations about the transaction in the complaint that demonstrate the absence of fairness." *Monroe Cty. Emps.' Ret. Sys. v. Carlson*, 2010 WL 2376890, at *2 (Del. Ch. June 7, 2010).

"The concept of fairness has two basic aspects: fair dealing and fair price." *Weinberger v. UOP, Inc.*, 457 A.2d 701, 711 (Del. 1983). Indicia of fair dealing may include a transaction's "timing and initiation, structure, negotiations and approval,"[3] while fair price "relates to the economic and financial considerations of the [transaction], including all relevant factors . . . ." *Weinberger*, 457 A.2d at 711. "The fact intensive nature of this inquiry 'normally will preclude dismissal of a complaint on a Rule 12(b)(6) motion to dismiss.'" *Delman v. GigAcquisions3*, 288 A.3d 692, 722 (Del. Ch. 2003) (quoting *Orman v. Cullman*, 794 A.2d 5, 21 n.36 (Del. Ch. 2002)). Still, to state a claim, a complaint must allege facts from which the Court can infer that both the process leading up to and price of the challenged

---

[3] *In re BGC P'rs, Inc. Deriv. Litig.*, 2022 WL 3581641, at *18 (Del. Ch. Aug. 19, 2022), *aff'd*, 303 A.3d 337 (Del. 2023).

transaction conceivably were unfair.[4] *Carlson*, 2010 WL 2376890, at *2 (dismissing breach of fiduciary duty claims where "[u]nfair dealing [wa]s the sole theme of the factual allegations" and the complaint contained "no factual allegations geared towards proving that the [challenged] transactions were executed at an unfair price"); *see also, e.g.*, *Ravenswood Inv. Co., L.P. v. Winmill*, 2011 WL 2176478, at *4 (Del. Ch. May 31, 2011) (dismissing a challenge to a performance equity plan where the plaintiff "ha[d] not alleged facts suggesting unfairness").

The Complaint alleges that directors affiliated with the preferred stockholders approved a transaction that triggered the preferred's contractual rights to a liquidation preference, leaving little value remaining for the common. That fact pattern is not unique.[5] What is unusual is the Complaint's brazen failure even to

---

[4] Plaintiff asserts that his "most compelling" argument is that, as the plaintiff alleged in *Manti Holdings, LLC v. Carlyle Group Inc.*, 2022 WL 1815759 (Del. Ch. June 3, 2022), "Defendants breach[ed] their fiduciary duties by approving a merger agreement which provides additional, non-ratable benefits to themselves directly or to the preferred shareholders they represent." AB at 18-20. Because the parties agree that entire fairness is the appropriate standard of review on this Motion, I do not address whether the facts alleged here are analogous to the facts in *Manti*. I note, however, that nothing in *Manti* relieves Plaintiff's burden to plead facts supporting unfair price. *See Manti*, 2022 WL 1815759, at *10 ("Under these alleged facts, it is reasonably conceivable that the Sale did not reflect a fair process or a fair price.").

[5] *See, e.g.*, *Mehta v. Mobile Posse, Inc.*, 2019 WL 2025231, at *1 (Del. Ch. May 8, 2019) (analyzing claims where "[d]irectors appointed by the preferred stockholders negotiated

attempt to allege that the common stockholders conceivably could have received value for their shares through *any other* course of action. *See In re Trados Inc. S'holder Litig.*, 73 A.3d 17, 77 (Del. Ch. 2013) ("If [the company]'s common stock had no economic value before the Merger, then the common stockholders received the substantial equivalent in value of what they had before, and the Merger satisfies the test of fairness.").

Plaintiff does not, for example, allege that "the common stockholders would have been able to receive some consideration for their [Remine] shares at some point in the future had the [M]erger not occurred[,]"[6] because either "the Company's performance had significantly improved,"[7] "the Company had secured additional

---

[a] merger" for "consideration . . . below the preferred stockholders' combined liquidation preference, so the common stockholders received no consideration"); *Trados*, 2009 WL 2225958, at *7 (addressing a challenge to a merger that "triggered the $57.9 million liquidation preference of the preferred stockholders, receiv[ing] approximately []52 million dollars as a result of the merger" when, "[i]n contrast, the common stockholders received nothing"); *cf. In re Good Tech. Corp. S'holder Litig.*, 2017 WL 2537347, at *2 (Del. Ch. May 12, 2017) (assessing allegations that the company's fiduciaries "were associated with venture capital funds holding convertible preferred stock with return profiles that favored high-value transactions" and breached their fiduciary duties by negotiating an unfair merger under "exigent circumstances"); *Frederick Hsu Living Tr. v. ODN Hldg. Corp.*, 2017 WL 1437308, at *35 (Del. Ch. Apr. 14, 2017) (analyzing a challenge to a conflicted board's decision to sell assets to generate cash to pay preferred stockholders' redemptions).

[6] *Trados*, 2009 WL 2225958, at *7.

[7] *Id.*

capital through debt financing,"[8] or "the common stockholders could have received payment" through some other means, such as "an earn-out."[9] *Compare Frederick Hsu Living Tr.*, 2017 WL 1437308, at \*35 (finding a complaint adequately pled unfair price where it alleged that "[o]ver a long-term time horizon, the Company conceivably could have grown its business, gradually redeemed all of the Preferred Stock, and then generated returns for its common stockholders"). To the contrary, Plaintiff alleges the Company would have "run out of cash by the end of 2021" and that in the absence of a merger, the preferred stockholders' liquidation preference "would remain intact and [the common stockholders] would receive nothing in the future." Compl. ¶¶ 23, 27-28, 33. And, Plaintiff also expressly concedes that the Complaint "does not plead that there was an alternate more valuable offer that the [B]oard rejected." AB at 16-17; *see also* Compl. ¶ 28 (alleging that "no one wanted to buy the Company").

Surprisingly, when the Motion identified this glaring pleading deficiency, Plaintiff opted not to amend the Complaint to bolster its unfair price allegations.

---

[8] *Id.*

[9] *Mehta*, 2019 WL 2025231, at \*13.

12

Instead, Plaintiff raises two arguments in opposition to the Motion, but neither saves his claim.

First, Plaintiff asserts that "the process itself was so incompetently run that [it] prevented the Company from continuing as a going concern." AB at 16-17. In making this argument, Plaintiff seems to suggest that a poor process relieves a plaintiff from any burden to allege unfair price. *But see Carlson*, 2010 WL 2376890, at *2 (explaining that a complaint must allege unfair process *and* unfair price to state a claim). Even if that were so, this theory does not remedy Plaintiff's failure to plead that the Company had any other valuable alternatives even *before* it initiated a sale process, such that common stockholders conceivably could have received some value for their shares if the Company had never pursued a sale.

Second, Plaintiff contends it is "impossible" that the Merger consideration was "worth more than the Company before closing" because the common stockholders received "worthless equity" in the deal. AB at 8, 17. But because the Complaint fails to allege any factual scenario in which the common stockholders could have received value for their shares, this allegation too fails to demonstrate unfair price. *See Trados*, 2009 WL 2225958, at *7 n.36 (suggesting it is not "necessarily . . . a breach of fiduciary duty for a board to approve a transaction that,

as a result of liquidation preferences, does not provide any consideration to the common stockholders").[10]

Because the Complaint fails to adequately allege facts from which the Court can infer that the Merger price was unfair to the common stockholders, the Complaint fails to state a claim upon which relief may be granted.

## III.  CONCLUSION

For the reasons explained above, I recommend that the Court grant the Motion and dismiss the Complaint.  This is a final report under Rule 144.[11]

Sincerely,

*/s/ Bonnie W. David*

Bonnie W. David
Magistrate in Chancery

cc:    All counsel of record (by File & ServeXpress)

---

[10] At oral argument, Plaintiff argued that even if the common stock was otherwise worthless, the common stockholders' ability to vote down the Merger had value, as evidenced by the fact that holders of the Series A preferred stock were willing to reduce their liquidation preference to induce the common stockholders to support the transaction. That argument, while interesting, was not fairly presented in briefing, and I therefore do not consider it here.  *See Emerald P'rs v. Berlin*, 726 A.2d 1215, 1224 (Del. 1999) ("Issues not briefed are deemed waived.").

[11] *See* Ct. Ch. R. 144(d)(1) ("In actions that are not summary in nature or in which the Court has not ordered expedited proceedings, any party taking exception shall file a notice of exceptions within eleven days of the date of the report.").