# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| PIMPAKTRA A. RUST, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 2020-0762-BWD |
| | ) | |
| VINA ELISE RUST, CHAKDHARI | ) | |
| ANISSA RUST, and THE BRYN | ) | |
| MAWR TRUST COMPANY OF | ) | |
| DELAWARE, a Delaware limited | ) | |
| purpose trust company, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION GRANTING
## THE BRYN MAWR TRUST COMPANY'S MOTION TO DISMISS

Date Submitted: February 20, 2025
Date Decided: March 10, 2025

Sean J. Bellew, BELLEW LLC, Wilmington, DE; OF COUNSEL: F. Faison Middleton, IV, WATSON SPENCE LLP, Atlanta, GA; *Attorneys for Plaintiff Pimpaktra A. Rust.*

Trisha W. Hall, Scott E. Swenson, and Jarrett W. Horowitz, CONNOLLY GALLAGHER LLP, Wilmington, DE; *Attorneys for Defendant The Bryn Mawr Trust Company of Delaware.*

William M. Lafferty and Lauren K. Neal, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, DE; *Attorneys for Defendants Vina Elise Rust and Chakdhari Anissa Rust.*

**DAVID, V.C.**

A settlor created a revokable trust and funded it with real property and other valuables. The trust agreement governing the trust granted the settlor's three brothers a lifetime interest in certain properties and provided that, upon each brother's death, the property in the trust would pass to that brother's living issue, per stirpes.

After the settlor's death but during his brother's lifetime, the trustee, Wilmington Trust Company ("Wilmington Trust"), facilitated a transfer of real property from the trust into a limited liability company, with the trust retaining membership interests in the company. The Bryn Mawr Trust Company of Delaware ("Bryn Mawr") later replaced Wilmington Trust as trustee.

When the settlor's brother died, a dispute arose among his three daughters to whom the trust property passes. One daughter, the plaintiff here, asserts that the settlor intended for the real property formerly held in the trust to be distributed to the sisters directly upon their father's death. She alleges that Bryn Mawr breached its fiduciary duties as trustee by failing to carry out the settlor's intent by distributing direct interests in that real property, and instead attempting to distribute membership interests in the limited liability company. She also alleges that Bryn Mawr aided and abetted breaches of fiduciary duty committed by her sisters.

Bryn Mawr has moved to dismiss the claims against it under Court of Chancery Rule 12(b)(6). This memorandum opinion concludes that the plaintiff's

complaint fails to state a claim against Bryn Mawr for breach of fiduciary duty or aiding and abetting. The motion is therefore granted.

## I. BACKGROUND

### A. Phillip Settles The Trust And Wilmington Trust, As Trustee, Forms An LLC To Hold Real Property.

Plaintiff Pimpaktra Rust ("Pim") and defendants Vina Rust ("Vina") and Chakdhari Rust ("Anissa") are the daughters of the late Richard Rust ("Richard"). Verified Am. and Supplemented Compl. [hereinafter Am. Compl.] ¶ 10, Dkt. 223.

On July 10, 1953, Philip Rust ("Philip"), Richard's brother, created a revocable trust under a trust agreement (as amended, the "Trust Agreement"),[1] which he funded with real property and other valuables. *Id.* ¶ 45. The Trust Agreement granted Philip's three brothers, including Richard, a lifetime interest in certain properties, and also provided that, unless his brothers directed otherwise, upon each of their deaths, the property in the trust would pass to their "then living issue" under "the last instrument in writing which he shall have executed and delivered to [the] Trustee during his lifetime . . . ." *Id.* ¶¶ 52–53; Am. Compl., Ex. A [hereinafter Trust Agt.] Art. Fourth(B)(2)–(3).

---

[1] The Trust Agreement was amended by Supplemental Trust Agreements dated December 12, 1956, November 6, 1964, May 1, 1967, April 16, 1970, and July 25, 1972, and amended and restated by Supplemental Trust Agreements dated May 16, 1984 and August 17, 1994. Am. Compl. ¶ 45.

Philip died on October 25, 2010, and the trust was divided into shares for Philip's three brothers, including Richard (the "Trust"). Am. Compl. ¶¶ 52, 76. At that time, Wilmington Trust served as the Trust's trustee. *Id.* ¶¶ 45, 102. Wilmington Trust refused to accept direct control of real estate held in the Trust, and instead insisted that a limited liability company be formed to "handle the real property." *Id.* ¶¶ 64–65, 67. On September 29, 2011, attorneys from the law firm Ivins, Phillips & Barker ("IPB"), acting on behalf of Philip's estate, formed Goodenow LLC ("Goodenow" or the "LLC"), a Delaware limited liability company. *Id.* ¶ 64. Wilmington Trust transferred the Trust's real property to Goodenow and was designated the LLC's sole member, with Richard serving as Goodenow's manager. *Id.* ¶¶ 122–25.

> Pim alleges that when Goodenow was formed,
>
> Wilmington Trust was instructed to perform three primary tasks: "<u>hold</u>, <u>administer</u> and <u>distribute</u>." The LLC scheme created an entity through which the Trustee could indirectly *hold* title to the real estate. Pursuant to the overall LLC scheme, the Trustee would then outsource its *administrative* obligation to the LLC manager, who as the lifetime income beneficiary of the real estate was uniquely positioned and motivated to maintain the property during his lifetime. The final task was to *distribute* the real property to the Trust beneficiaries . . . .

*Id.* ¶ 68 (emphasis in original). Pim alleges that by forming Goodenow, Wilmington Trust and Richard did not mean to "affect the substance of the distribution plan" under the Trust Agreement, as "[t]he LLC was never intended to survive beyond the Trust's termination." *Id.* ¶¶ 2, 73.

3

## B.     The Trust Agreement And The LLC Agreement

The Trust Agreement provides that upon Richard's death, shares of the Trust shall be distributed "free of trust" to Richard's issue:

> 2.  Upon the death of such brother, Trustee shall pay over and distribute the then remaining principal of such share, together with any undistributed or accumulated income, to or among such brother's issue, in such manner and amounts, for such interests or estates, whether in trust or otherwise, and upon such terms and conditions without regard to equality and to the exclusion of any, as such brother shall appoint in the last instrument in writing which he shall have executed and delivered to Trustee during his lifetime or, failing any such instrument, by his Last Will and Testament specifically referring to this power of appointment.

> 3.  In the event such brother fails in whole or in part to exercise effectively the limited power of appointment conferred on him under subparagraph (2), Trustee shall divide the then remaining principal of such share, to the extent not fully and effectively appointed together with any undistributed or accumulated income, into shares for such brother's then living issue, per stirpes or, if none, for the then living issue, per stirpes, of Grantor's parents; provided, however, that any share so set aside for a brother of Grantor for whom a trust is then in existence under this Paragraph B shall be added to the principal of such trust, to be held, administered and distributed as a part thereof and any share so set aside for the benefit of an issue of Grantor's parents more remote than a child of Grantor's parents shall be distributed, free of trust to any such issue who has attained the age of forty (40) years and shall be held for the benefit of any such issue who has not attained the age of forty (40) years in accordance with the provisions of subparagraph (5) of this Paragraph B.

Trust Agt. Art. Fourth(B)(2)–(3).

Although the Trust Agreement contemplates that the Trust property will be distributed upon Richard's death, Section 2.6 of the LLC Agreement states that

4

Goodenow "will have a perpetual existence unless [Goodenow] is dissolved in accordance with the provisions of this Agreement." Am. Compl., Ex. H [hereinafter LLC Agt.] § 2.6. Section 8.1, governing dissolution, states that Goodenow "shall be dissolved upon any of the following events":

> (i) the written consent of the Manager and the vote of the Members, such that there is 100% agreement of voting Members, with no dissenting votes and no abstentions;

> (ii) at any time there are no members of the Company, unless the Company is continued without dissolution in accordance with the Act;

> (iii) the termination of the last remaining Series; or

> (iv) the entry of a decree of judicial dissolution under Section 18-215 of the Act.[2]

*Id.* § 8.1.

Although the LLC Agreement provides that Goodenow will continue until dissolution, Pim points out that some provisions in the LLC Agreement suggest the drafter contemplated Goodenow would be managed consistent with the terms of the Trust Agreement. Am. Compl. ¶ 83. For example, Sections 4.2(c)(i) and (ii) prohibit a manager from taking any act, "with respect to any Member without the consent of such Member," that "is in violation of the . . . Trust Agreement" or "would result in

---

[2] Title 6, Section 18-215(b)(11) states: "On application by or for a member or manager associated with a protected series, the Court of Chancery may decree termination of such series whenever it is not reasonably practicable to carry on the business of such series in conformity with a limited liability company agreement."

5

the termination of the Member's status as a valid trust." LLC Agt. § 4.2(c)(i), (ii). Section 7.1(b)(iv) prohibits the transfer of a membership interest unless "the transferor has demonstrated to the reasonable satisfaction of the Manager that the transfer will not result in a violation of the . . . Trust Agreement." *Id.* § 7.1(b)(iv). And Section 4.1(c) provides that if the manager is unable or unwilling to serve, "the Successor Manager shall be one or more of the current beneficiaries of the [Trust] (or any trust created under the . . . Trust Agreement)." *Id.* § 4.1(c).

### C. Bryn Mawr Is Appointed Trustee, Richard Passes Away, And The Trust Is Terminated.

Nearly five years after Goodenow's formation, on June 17, 2016, Bryn Mawr, a Delaware limited purpose trust company, replaced Wilmington Trust as trustee of the Trust and sole member of Goodenow. Am. Compl. ¶ 102.

Richard passed away three years later, on September 23, 2019. *Id.* ¶ 113. On several occasions thereafter, Pim demanded that Bryn Mawr distribute to her a one-third direct interest in the real property held by Goodenow. *Id.* ¶¶ 135, 137.

Section 4.1(c) of the LLC Agreement states that a "Successor Manager shall be one or more of the current beneficiaries of the . . . Trust . . . ." LLC Agt. § 4.1(c). On October 29, November 1, and November 2, 2019, Vina, Anissa, and Pim, respectively, each appointed herself as a co-manager of Goodenow. Am. Compl. ¶ 138. Since then, Vina and Anissa, representing a majority of the managers, "have seized control of Trust property that must be distributed to Pim." *Id.* ¶ 152.

6

On January 17, 2020, Bryn Mawr circulated a "Waiver, Release and Indemnification." *Id.* ¶ 158; *see also* Am. Compl., Ex. R at 3 (proposing to release claims against Bryn Mawr for any act by Bryn Mawr "related to or arising out of the administration of the Trust, including but not limited to the distribution of the Trust assets to the Beneficiaries and the subsequent termination of the Trust"). Pim did not sign that document. Am. Compl. ¶ 159.

On February 23, Pim sent a letter to Bryn Mawr purporting to accept the role of Trust adviser and directing Bryn Mawr to dissolve Goodenow. *Id.* ¶ 160. On February 27, Bryn Mawr responded that it did not have the authority to dissolve Goodenow "without the consent or direction of the Trust's adviser in accordance with Article TENTH of the Trust instrument" and "[b]ecause the Trust is terminating, no adviser is currently serving to direct the Trustee as to any investment decisions (which the dissolution of the LLC would be)." *Id.* ¶ 161.

On May 8, Bryn Mawr sent Pim a "Notice of Termination of Trust and Period to Initiate Claims," which advised that Bryn Mawr had ceased acting as trustee of the Trust, the Trust had terminated pursuant to the Trust Agreement, and the Trust's assets would "be distributed in kind, without liquidation or reorganization." *Id.* ¶ 162. The notice advised Pim of the 120-day period in which she could bring a claim against Bryn Mawr under 12 *Del. C.* § 3585(a)(2). Am. Compl., Ex. U.

**D.    Procedural History**

On September 4, 2020, one day before the expiration of the 120-day period under Section 3585, Pim initiated this action through the filing of a Verified Complaint (the "Initial Complaint"). Dkt. 1. The Initial Complaint named Vina, Anissa, and Bryn Mawr as defendants. *See id.* On December 8, Vina and Anissa filed an Answer, Counterclaims, and Cross-Claims, which answered the Initial Complaint, asserted counterclaims against Pim, and brought a cross-claim against Bryn Mawr seeking an order requiring it to transfer a one-third membership interest in Goodenow to each of Pim, Vina, and Anissa. Dkt. 9. On January 4, 2021, Bryn Mawr filed an Answer and Counterclaim/Cross-Claim, seeking instructions regarding the distribution of membership interests in Goodenow. Dkt. 10.

On January 25, Vina and Anissa held a meeting of the managers of Goodenow, at which they purported to approve the transfer of a one-third interest in Goodenow to each of Pim, Vina, and Anissa. Pl. Pimpaktra A. Rust's Reply to Bryn Mawr Trust Company's Countercl. for Instrs. [hereinafter "Pl.'s Answer"] at 6–7, Dkt. 61. On February 5, the Court held a status conference at which Bryn Mawr sought approval to distribute the membership interests in Goodenow to Pim, Vina, and Anissa. Tr. of 2-5-21 Status Conf. at 6:1–11, Dkt. 33. The Court instructed that the membership interests could "be distributed with the understanding that there is a

8

cloud on that ownership interest subject to the resolution of this action." *Id.* at 6:21–24.

On February 16, Bryn Mawr sent Assignment and Assumption Agreements to Pim, Vina, and Anissa to effectuate the transfer of their membership interests in Goodenow. Pl.'s Answer 7-8. Vina and Anissa executed the agreements, but Pim refused to do so. *Id.*; Dkt. 54, Ex. F. As a result, Bryn Mawr distributed membership interests to Vina and Anissa but continues to hold Pim's membership interest. Am. Compl. ¶ 39.

On November 19, 2021, Bryn Mawr filed a Motion to be Removed and for Judgment on the Pleadings Pursuant to Court of Chancery Rule 12(c). Dkt. 75. On September 8, 2022, the Court entered a Stipulation and Order Regarding Status of Bryn Mawr Trust Company of Delaware, dismissing Bryn Mawr "as a defendant without prejudice and with no effect on Pim's right to seek relief that calls for any action to be taken by Bryn Mawr or to seek leave to amend her claims, including as to Bryn Mawr, based on facts discovered through discovery in this action or otherwise or Bryn Mawr's right to oppose." Dkt. 101.

### E.  The Amended Complaint

On November 11, 2022, Pim filed a Motion for Leave to File a Second Verified Amended and Supplemented Complaint, which Bryn Mawr opposed on December 23, 2022. Dkts. 122, 144. On May 16, 2023, the Court issued a letter

opinion ruling that Pim's "motion to amend the Complaint to add Bryn Mawr Trust as a Defendant is granted, without prejudice to Bryn Mawr's right to move to dismiss." *Rust v. Rust*, 2023 WL 3476501, at *1 (Del. Ch. May 16, 2023). On August 15, 2024, Pim filed a Verified Amended and Supplemented Complaint (the "Amended Complaint").

Count Three of the Amended Complaint alleges that Bryn Mawr aided and abetted Vina and Anissa's breaches of the LLC Agreement. Am. Compl. ¶¶ 184–91. Count Four alleges that Bryn Mawr breached its fiduciary duties as trustee of the Trust. *Id.* ¶¶ 192–210.

Bryn Mawr moved to dismiss Counts Three and Four of the Amended Complaint on August 29, 2024 (the "Motion").[3] The Court heard oral argument on the Motion on February 20, 2024. Dkts. 244, 246.

## II.  ANALYSIS

Bryn Mawr has moved to dismiss the Amended Complaint under Court of Chancery Rule 12(b)(6) for failure to state a claim. When reviewing a motion to

---

[3] Dkt. 227 [hereinafter Mot.]. On October 1, 2024, Bryn Mawr filed an opening brief in support of the Motion. Def. The Bryn Mawr Tr. Co. of Del.'s Opening Br. in Supp. of its Mot. to Dismiss [hereinafter OB], Dkt. 235. On November 18, Pim filed an opposition to the Motion. Pl.'s Resp. in Opp'n to The Bryn Mawr Tr. Co. of Del.'s Mot. to Dismiss [hereinafter AB], Dkt. 236. On December 18, Bryn Mawr filed a reply brief in further support of the Motion. Def. The Bryn Mawr Tr. Co. of Del.'s Reply Br. in Further Supp. of its Mot. to Dismiss [hereinafter RB], Dkt. 237.

dismiss under Rule 12(b)(6), Delaware courts "(1) accept all well pleaded factual allegations as true, (2) accept even vague allegations as 'well pleaded' if they give the opposing party notice of the claim, [and] (3) draw all reasonable inferences in favor of the non-moving party . . . ." *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Hldgs. LLC*, 27 A.3d 531, 535 (Del. 2011) (citing *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002)).

## A. The Court Did Not Resolve The Arguments Raised In The Motion When It Granted Leave To Amend.

Pim contends that "the Court has already ruled against Bryn Mawr on the issues it raises" in support of the Motion. AB at 20. It has not. On May 16, 2023, the Court issued a letter opinion ruling that Pim's "motion to amend the Complaint to add Bryn Mawr Trust as a Defendant is granted, without prejudice to Bryn Mawr's right to move to dismiss." *Rust*, 2023 WL 3476501, at *1. In doing so, the Court did not implicitly reject Bryn Mawr's arguments that amendment would be futile— it deferred ruling on them until presented with a fully briefed motion to dismiss.

## B. The Amended Complaint Fails To State A Claim Against Bryn Mawr For Breach Of Fiduciary Duty.

Count Four of the Amended Complaint alleges a claim against Bryn Mawr for breach of fiduciary duty in Bryn Mawr's capacity as trustee of the Trust.

"Under default principles of Delaware law, a trustee owes fiduciary duties to a beneficiary." *Tigani v. Tigani*, 2021 WL 1197576, at *13 (Del. Ch. Mar. 30, 2021),

11

*aff'd*, 271 A.3d 741 (Del. 2022) (TABLE). "At common law, the duties of a trustee to trust beneficiaries include loyalty, good faith, and due care."[4] *In re Nat'l Collegiate Student Loan Trs. Litig.*, 251 A.3d 116, 185 (Del. Ch. 2020) (citations and quotations omitted). "Trustees must also act within the scope of authority granted by the governing trust documents." *Rende v. Rende*, 2023 WL 2180572, at *11 (Del. Ch. Feb. 23, 2023). But "[a] trustee who acted in good faith reliance on the terms of a written governing instrument is not liable to a beneficiary for a breach of trust to the extent the breach resulted from the reliance." 12 *Del. C.* § 3586.

The Amended Complaint raises four theories in support of Count Four. Pim's primary argument is that Bryn Mawr breached its fiduciary duties when it failed to realize the settlor's intent by distributing a direct interest in the real property held by Goodenow, and instead asked the beneficiaries to accept membership interests in the LLC. In raising this argument, Pim makes no effort to explain whether or how Bryn Mawr failed to act carefully or loyally in carrying out its responsibilities as trustee.[5]

---

[4] While "[t]he terms of a trust agreement may eliminate or restrict default fiduciary obligations," the Trust Agreement does not do so here. *Sweeney v. Sweeney*, 2024 WL 3040424, at *9 (Del. Ch. June 18, 2024).

[5] Pim argues that the issue of whether Bryn Mawr followed the terms of the Trust Agreement and was required to distribute the membership interests "raises factual issues inappropriate for a motion to dismiss," but does not identify any fact issues pertinent to the motion to dismiss. AB at 34. For example, Pim suggests that Vina and Anissa previously reported that they received their membership interests in Goodenow in 2019, while Bryn

12

Instead, Pim suggests Bryn Mawr breached a duty to understand and carry out the settlor's intent; yet she does not identify any provision of the Trust Agreement that Bryn Mawr actually failed to follow.[6] To the contrary, Bryn Mawr complied with the plain language of Article Fourth(B)(3) of the Trust Agreement by attempting to distribute the Trust's only assets—cash, marketable securities, and membership interests in the LLC—to the Trust's beneficiaries upon Richard's death. Am. Compl. ¶¶ 39, 121.

Relatedly, Pim alleges that Bryn Mawr breached its fiduciary duties by "recognizing" Vina and Anissa as co-managers of Goodenow and "allowing" them to violate the LLC Agreement, thereby "perpetuating the LLC scheme." *Id.* ¶¶ 189, 197. But again, Pim fails to explain how Bryn Mawr breached either a duty of care or loyalty in dealing with Vina and Anissa.

Pim also alleges in conclusory fashion that Bryn Mawr improperly withheld information from the beneficiaries about the purpose of forming Goodenow, but does not identify what information supposedly was withheld. *Id.* ¶¶ 196–97.

---

Mawr contends it transferred their membership interests in 2021 with the Court's approval. *Id.* at 35–36. Pim does not explain how that "dispute" has any bearing on whether the Amended Complaint states a claim against Bryn Mawr for breach of fiduciary duty.

[6] Pim contends that Article Fourth(B)(3) requires the Trustee to distribute assets "free of trust," but does not allege that the membership interests are held in "trust," only that they are held by a limited liability company.

13

Finally, Pim alleges that Bryn Mawr breached its fiduciary duties by "ma[king] no effort" to dissolve Goodenow. *Id.* ¶ 198. As Bryn Mawr explains, outside of bringing a legal proceeding, dissolution under Section 8.1 of the LLC Agreement requires "the written consent of the Manager[s]." LLC Agt. § 8.1. Bryn Mawr is not, and has never been, a manager of Goodenow. Pim failed to address this argument in her answering brief, and any response is therefore waived. *See Emerald P'rs v. Berlin*, 726 A.2d 1215, 1224 (Del. 1999) ("Issues not briefed are deemed waived.").

The Amended Complaint fails to state a claim for breach of fiduciary duty against Bryn Mawr and Count Four must be dismissed.

## C. The Amended Complaint Fails To State A Claim Against Bryn Mawr For Aiding And Abetting.

Count Three of the Amended Complaint alleges a claim against Bryn Mawr for aiding and abetting Vina and Anissa's breaches of the LLC Agreement.

Count Three largely repackages Pim's breach of fiduciary duty allegations. She alleges that Bryn Mawr aided and abetted Vina and Anissa's breaches by failing to distribute the real property held in Goodenow, "recognizing" Vina and Anissa as Goodenow's co-managers, and "allowing" Vina and Anissa "to take actions in violation of the Trust Agreement and LLC Agreement which deprived Pim of her interest in the real property." Am. Compl. ¶ 189.

14

The parties' briefing treats Count Three as a claim for aiding and abetting a breach of fiduciary duty. Such a claim requires pleading "(1) the existence of a fiduciary relationship, (2) a breach of the fiduciary's duty, . . . (3) knowing participation in that breach by the defendants, and (4) damages proximately caused by the breach." *In re Mindbody, Inc.*, 2024 WL 4926910, at *31 (Del. Dec. 2, 2024). "[K]nowing participation in a . . . fiduciary breach requires that the third party act with the knowledge that the conduct advocated or assisted constitutes such a breach." *Id.* at *32. "Many Delaware cases have cited § 876(b) [of the Restatement (Second) of Torts] as persuasive authority for what the 'knowing participation' element requires." *Id.* Section 876 states:

> For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he
>
> > (a) does a tortious act in concert with the other or pursuant to a common design with him, or
> >
> > (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or
> >
> > (c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person.

Restatement (Second) of Torts § 876 (1979).

The Amended Complaint fails to allege facts from which the Court can reasonably infer that Bryn Mawr knowingly participated in a breach of fiduciary

duty. The only acts Bryn Mawr is alleged to have taken in furtherance of a fiduciary breach are "distributing membership interests to [Vina and Anissa] and recognizing them as both owners and managers of Goodenow." Am. Compl. ¶ 133. As explained above, Bryn Mawr complied with the plain language of Article Fourth(B)(3) by attempting to distribute the Trust's assets to the beneficiaries upon Richard's death. And Pim fails to explain how "recognizing" Vina and Anissa as Goodenow's co-managers substantially assisted them in breaching their fiduciary duties.

For these reasons, the Amended Complaint fails to state an aiding and abetting claim against Bryn Mawr and Count Three must be dismissed.[7]

## III. CONCLUSION

As explained above, Counts Three and Four of the Amended Complaint fail to state a claim against Bryn Mawr and must be dismissed. The Motion is granted.

---

[7] Because the Motion succeeds on the merits, the Court does not address Bryn Mawr's additional arguments that Pim's claims against Bryn Mawr are untimely and precluded by the prior dismissal.